## Hunter's Estate.

*Wills — Trusts — Charities — Perpetuities—Gift to trustees to establish Department of Clinical Surgery preferably at University of Pennsylvania unless it failed to provide appropriate site, in which case trustees to select another beneficiary or establish it themselves.*

Testator gave the residue of his estate to his executor in trust to pay the income to his wife and daughter and the survivor of them, and upon the death of both, he bequeathed the residue to trustees, named, in trust for the establishment of a department of clinical surgery, expressing his expectation and desire that it should be established and conducted by his trustees with the aid and assistance of the University of Pennsylvania, unless said University should fail to provide an appropriate site for the buildings in which to house it, or should fail or refuse to enter into covenants satisfactory to his trustees, in which case he provided that they should have authority, in their discretion, to substitute instead of the University of Pennsylvania some other medical college or institution which would be willing to make arrangements satisfactory to them, or to purchase an appropriate site, erect appropriate buildings thereon and equip the same as in the will directed:

*Held*, that the gift to the trustees was a vested remainder to take effect on the death of the last surviving life-tenant, and was not dependent upon the action of the University in providing a site for the buildings in which to house the charity; hence, the rule against perpetuities had no application.

Act of May 23, 1895, P. L. 114, applied.

Exceptions to adjudication.  O. C. Phila. Co., Oct. T., 1896, No. 160.

It appears from the adjudication of the auditing judge, Thompson, J., that testator died May 28, 1895, leaving a will dated 1893, the day and month not being filled in, duly witnessed by three subscribing witnesses, which in due course was admitted to probate.   The relevant items of the will were as follows:

"Item.  All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath unto my Executor hereinafter named, in Trust, to hold, invest and reinvest the same, and to collect the rents, profits and income arising from the same, and to pay over to my wife, Arabella L. Hunter, one-half of such income for and during all the term of her natural life;  said payment to be made in addition to the Twenty thousand Dollars made payable to her under and by virtue of an ante-nuptial contract entered into between my said wife and myself, dated Oct. 26, 1889, which ante-nuptial contract, however, is to be and remain in full force and virtue, and to pay over the remaining one-half of said income unto my daughter, Elizabeth R. Moulton, during all the term of her natural life, and upon the death of my said wife or daughter the whole income of my said residuary estate shall be paid to the survivor of my said wife and daughter for the term of the natural life of such survivor.

"Item.  Upon the termination of the last of the said life estates I give, devise and bequeath all my estate and property, real, personal and mixed, and all the rest, residue and remainder thereof unto Dr. J. William White, Dr. John L. Billings and Richard Y. Cook of the City of Philadelphia and to the survivors and survivor and remainder of them, in Trust nevertheless for the establishment of a Department of Clinical Surgery for the practice of and instruction in surgery for the relief of wounded and suffering humanity, which Department shall be forever known and designated as 'The Agnew and Hunter Department of Clinical Surgery,' in memory of Doctor D. Hayes Agnew and my son, Dr. Charles T. Hunter.

"It is my expectation and desire that said Department of Clinical Surgery shall be established and conducted by my said Trustees, with the aid and assistance of the University of Pennsylvania, and as an adjunct to the hos-

pital thereof during the lifetime and continuance in office of said Trustees and of the survivor or remainder of them, and, at the death, incapacity, retirement or removal of the last of said Trustees, that the same shall be merged and vest in the said University of Pennsylvania as hereinafter provided. This provision of my said will, however, is to be conditional upon the said University providing and setting apart, on such terms and conditions as shall be satisfactory to my said Trustees, a proper piece of land, convenient to its Hospital, as a site for such buildings and their appurtenances, as may be required for the purposes and uses of the said Department.

"And I do hereby authorize and empower my said Trustees to enter into, make and execute such arrangements and agreements with the said University of Pennsylvania in this behalf as to them shall seem meet and proper.

"And I do further authorize, empower and direct my said Trustees to apply, devote and expend such portion of the *corpus* or principal of the said Trust property as may be necessary to the erection and construction of such buildings, and the purchase of such furniture, apparatus and appliances as in their judgment shall be required, and fit and proper for the establishment and proper equipment of the said Clinical Department of Surgery, and the balance of said trust property to invest and keep invested in legal investments, and to collect and expend the income thereof towards the support, maintenance and proper conduct of the said Department.

"And I further will and direct that said Department shall be under the management, direction and control of my said Trustee or Trustees so long as one or more of them shall survive and continue in office, and that they, or the survivor or survivors of them, shall have full power and authority to make all needful rules and regulations, and do everything necessary or proper to be done to carry out and effectuate my intentions herein; and their action, unless it be in direct conflict with the express terms and provisions of this, my will, shall be considered as expressing my intentions with reference to this Trust. And upon the death, retirement or removal of the last of said Trustees, then I will and direct that the *corpus*, body or principal of the Trust property, including the buildings which may have been erected as herein before directed, and all other property, funds and investments belonging to said Trust, shall pass over and be vested in the said University, as Trustee hereunder, upon and subject to the same Trusts on which they were held by their predecessors and with the same power, authority and discretion as was vested in their predecessors aforesaid. Unless the said University shall fail to provide an appropriate site for the buildings of said Department, and shall fail or refuse to enter into agreements or covenants satisfactorily to my said Trustees herein named, or to the survivors or survivor of them, in reference to the use of such site, or in reference to the organization and conduct of said Department; in which case I provide that my said Trustees, J. William White, John L. Billings and Richard Y. Cook, and the survivors or survivor of them, shall have full authority, and I do thereupon direct and empower them, in their discretion, to substitute, in place and stead of said University of Pennsylvania, some other medical college or institution which shall be willing to make arrangements satisfactory to them, or, at their election, to purchase a proper site, erect proper buildings thereon, and equip the same as hereinbefore directed, carrying out the object or intent of said trust independently of the said University of Pennsylvania and independently of any other college or institution whatever, in which latter case the institution so founded shall be forever known and designated as 'The Agnew and Hunter Institution of Clinical Surgery.' And in the event of my said Trustees substi-

2 D. & C.

Hunter's Estate.

tuting some other medical college or institution in place of said University of Pennsylvania, as above provided, then I direct that upon the death, retirement or removal of the last of my said Trustees, that the *corpus*, body or principal of the trust body, including the buildings which may have been erected as hereinbefore directed, and all other property, funds and investments belonging to said trust, shall pass over to and be vested in such college or institution as may be so designated or substituted by my said Trustees or by the survivors or survivor of them in accordance with the object and intention of this my Will."

Arabella L. Hunter, testator's wife, died Jan. 19, 1922; Elizabeth R. Moulton, testator's daughter, died Feb. 23, 1916. The three trustees mentioned in the will to receive the residuary estate on the death of both the testator's wife and daughter, Dr. John S. Billings, Dr. J. William White and Richard Y. Cook, all died in the lifetime of the surviving life-tenant. The account was filed by the Guarantee Trust and Safe Deposit Company, to which the balance had been awarded by a prior decree of the Orphans' Court to carry out the trust contained in the will. A paper, signed by George E. Alter, Attorney-General of the Commonwealth, was filed at the audit, pursuant to the Act of May 23, 1895, P. L. 114, granting the University of Pennsylvania leave to make application by petition to the Orphans' Court for the appointment of a trustee or for an appropriate decree to carry into effect testator's purpose to establish a department of clinical surgery in memory of Drs. D. Hayes Agnew and Charles T. Hunter. At the audit it was contended on behalf of certain legatees under the will of Elizabeth R. Moulton, testator's deceased daughter, that the gift to charity was in violation of the rule against perpetuities, in that there was nothing in the will to compel the University to enter into an agreement to furnish an appropriate site for the buildings to house the charity within a life or lives in being and twenty-one years from testator's death, and, hence, the uncertainty as to the beneficiary might continue beyond that period, and that, therefore, the gift was void and the fund passed under the intestate law in force at the time of testator's death, and should be awarded to the executor of testator's only child, said Elizabeth R. Moulton. It was also contended that the confidence reposed by the testator in the three trustees named in the will was peculiarly personal and the court could not appoint substituted trustees capable of performing the duties imposed under the will. In regard to these contentions, the auditing judge, after quoting at length the provisions of the Acts of April 26, 1855, § 10, P. L. 328, 331, July 7, 1885, § 1, P. L. 259, May 9, 1889, § 1, P. L. 173, and May 23, 1895, § 1, P. L. 114, authorizing the Orphans' Court, under certain conditions, to supply a trustee, and by its decree carry into effect the intention of the testator, so far as it could be ascertained consistently with law or equity, and after summarizing the testimony taken at the audit tending to show that there had been an informal understanding between Dr. White and the University authorities that the department of clinical surgery was to be housed in one of the floors of the J. William White Memorial Building, said:

*Discussion.*

"As it is contended that the bequests under the will of testator violate the rule against perpetuities, it might be well to state what that rule is, and I adopt the definition of Mr. Justice Clark in Lawrence's Estate, 136 Pa. 354: 'The rule, as stated in Gray on Perpetuities, is as follows: 'No interest, subject to a condition precedent, is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the

interest.' This rule is in force in all of the states where the principles of the common law prevail, excepting as it may have been modified by statute. In Pennsylvania it is unaffected by statute, only as it is modified by the Acts of April 18, 1853, § 9, P. L. 506, and April 26, 1855, § 12, P. L. 332, which were suggested by the Thelluson Act, and operate only in restraint of accumulations.'

"I do not consider that the rule against perpetuities has any application to the bequest of the residuary estate in the will at bar. Mr. Ross and Mr. Hutchinson argued that the will of testator gives his residuary estate to his trustees or the University of Pennsylvania on condition of some kind or other, and their argument is based upon that proposition. A careful examination of the will of testator does not reveal that he gave his residuary estate on any condition whatsoever; on the contrary, his directions are clear and positive that his residuary estate shall be used by his trustees 'In Trust nevertheless for the establishment of a Department of Clinical Surgery for the practice of and instruction in surgery for the relief of wounded and suffering humanity, which Department shall be forever known and designated as 'The Agnew and Hunter Department of Clinical Surgery,' in memory of Doctor D. Hayes Agnew and my son, Dr. Charles T. Hunter.' He then goes on to say that it is his expectation and desire that this department be established with the aid and assistance of the University of Pennsylvania, and as an adjunct to the hospital thereof, provided the University will furnish a site for the building in which it is to be housed and will adopt the rules and regulations for the conduct thereof laid down by the trustees, and failing so to do, the trustees shall endeavor to establish said department in some other similar institution upon similar terms and conditions, and, further, failing to make said arrangement with the University of Pennsylvania or any other similar institution, the trustees are directed 'to purchase a proper site, erect proper buildings thereon, and equip the same as hereinbefore directed, carrying out the object or intent of said trust independently of the said University of Pennsylvania, and independently of any other college or institution whatever, in which latter case the institution so founded shall be forever known and designated as 'The Agnew and Hunter Institution of Clinical Surgery.' '

"It will thus be seen that testator clearly and most emphatically directed his residuary estate to be used for the establishment of a department of clinical surgery—preferably with the University of Pennsylvania, or else with some other similar institution. But whether the University of Pennsylvania or some other similar institution failed to furnish a site or to comply with such rules and regulations as the trustees prescribed, the duty of the trustees remained the same; and that is, to establish a department of clinical surgery. I see no condition or qualification annexed to this gift. As I believe the premises to be erroneous, the argument of Messrs. Ross and Hutchinson necessarily falls.

"As said in Manners v. Library Co., 93 Pa. 165: 'The argument ignores the distinction between primary objects and incidental directions,' and, as further said in that case (page 174) : 'But the devise in his will is to a public library'; to extend the usefulness of one already in existence if his devise is accepted, or to found a new one if his munificent gift is declined. This is an object which the law favors, and a trust which equity will administer.' Furthermore, once establish a trust for charitable purposes, and the heirs and next of kin have not only no interest in the subject-matter thereof, but no

2 D. & C.

standing to object in any court to the action of the court in carrying out the charitable purposes declared by the testator.

"In Kortright's Estate (No. 2), 237 Pa. 138, Mr. Justice Brown said: 'If the decree made is not a proper one, it is not open to objection by the appellants, for the acts of assembly referred to will not permit the bequests to fail and pass to the next of kin of testatrix. There was, therefore, no right in them at the time of her death to demand that any portion of her residuary estate should pass to them because of an alleged disregard of the law, for the very act under which they claim provided how the bequests should be saved; and if the disposition made by the testatrix exceeded 'the power of the court to determine the same by the rules of law or equity,' then the bequests are to be taken as having 'been made subject to be further regulated and disposed of by the Legislature of this Commonwealth,' in manner as nearly in conformity with the intent of the testatrix as practicable.'

"That was a case where a testatrix gave to charitable institutions a sum of money in excess of the amount which their charters authorized them to hold, and subsequently to the death of the testatrix and before the adjudication, said institutions amended their charters by increasing the amount of property which they could hold to an amount in excess of the bequests to them.

"The present Chief Justice, in Barnwell's Estate, 269 Pa. 443, 447-48, says: 'The fact that testator in the present instance did not formulate practical plans for carrying his broadly conceived charitable idea into effect is of no moment, so long as his 'general intent' is 'ascertainable' and he has vested others with authority to work out and put in operation the details necessary to make his idea of practical use to those he intended to benefit: Dulles's Estate, 218 Pa. 162, 168. . . . The broad idea intended by testator being within the purview of a charitable trust, and he having provided means for its practical realization, we cannot pronounce it illegal for indefiniteness.'

"In Anderson's Estate, 269 Pa. 535, where the will provided (page 537): 'I direct my said executors or the survivor of them to distribute said residue among such institutions or do such acts of charity therewith as in their judgment may seem best.'

"The executors being dead, the Supreme Court sustained the action of the court below in the appointment of a trustee, with the consent of the Attorney-General, to distribute the residue of the estate to charitable uses.

"In Stevens's Estate, 200 Pa. 318, which in principle is much like the case at bar, the syllabus states the facts and action of the court as follows: 'Where a testator directs that after the expiration of a life estate a certain fund shall be used by his trustees for the establishment of an orphan asylum, and all of the trustees die before any steps are taken to establish the asylum, and a substituted trustee is appointed in their place, and hereafter a corporation is organized by reputable persons, not, however, connected in any way with the estate, for the purpose of carrying out the trust created by the will, the Orphans' Court may direct the substituted trustee, who does not object, to pay over the whole fund to the corporation to carry out the purpose of testator.'

"In my judgment, the extracts from the minutes of the University of Pennsylvania and the testimony of Doctors Smith, Stengel and Frazier do not show such a completed, executed agreement with the trustees under testator's will as would warrant me in finding that the trustees had in their lifetime completed an agreement whereby a department of clinical surgery directed to be established by them under the will was to be established in connection with

Hunter's Estate.

the hospital of the University of Pennsylvania under rules and regulations satisfactory to the trustees; but said testimony does show that the trustees under testator's will had numerous talks with Doctors Smith and Stengel looking forward to the establishment in the University of Pennsylvania of a department of clinical surgery when the funds for the same became available by reason of the death of the life-tenants. It will be observed that testator did not impose any specific rules and regulations as to the establishment and conduct of the department which he directed his trustees to carry into effect. He left that to their discretion; and the testimony of some of the gentlemen above referred to shows that, in their talks with Doctor White, the department of clinical surgery established under the testator's will should and would be under rules and regulations similar to those governing the Pepper Clinical Laboratory, also connected with the Hospital of the University of Pennsylvania, and which bears the same relation to medicine as the clinical surgical department referred to in testator's will bears to surgery.

"Having thus shown that the trustees in their lifetime were dealing harmoniously with the officials of the University of Pennsylvania and, so far as the testimony shows, no other institution, and that Dr. White, speaking for his associates, designated the surgical pavilion, now known as the J. William White Memorial, then in course of construction, as the place in which the testator's department of clinical surgery should be housed, and the Attorney-General of the Commonwealth of Pennsylvania, by writing filed, having consented that an appropriate decree be entered, and being of opinion that the 'intent of the donor or testator' can best 'be carried into effect' by awarding the fund before me to the University of Pennsylvania, I, therefore, exercising the discretion and authority vested in me by the Act of May 23, 1895, P. L. 114, do order and direct that the fund in the hands of the accountant be paid to the University of Pennsylvania as hereinafter set forth."

The auditing judge accordingly directed the payment of the balance of capital, amounting to $198,362.15, less collateral inheritance tax, to the University of Pennsylvania "in trust nevertheless for the establishment of a Department of Clinical Surgery for the practice of and instruction in surgery for the relief of wounded and suffering humanity, which Department shall be forever known and designated as 'The Agnew and Hunter Department of Clinical Surgery,' in memory of Doctor D. Hayes Agnew and testator's son, Dr. Charles T. Hunter."

He also awarded to the University the income which had accumulated since the death of the last surviving life-tenant.

Exceptions were taken by the legatees under the will of Elizabeth R. Moulton and her executor.

*George Ross* and *Arthur E. Hutchinson (MacCoy, Evans, Hutchinson & Lewis* with them), for exceptants.

*William N. Trinkle (Bell, Kendrick, Trinkle & Deeter* with him), contra.

GUMMEY, J., Jan. 6, 1923.—The exceptions are filed on behalf of parties who take under the will of the testator's deceased daughter, Elizabeth Moulton, whose estate would be entitled to a distributive share of the present fund if the contention that the testator's will violated the rule against perpetuities should be sustained.

The testator gave the residue of his estate to his executor in trust to pay the income to his wife and daughter and to the survivor of them, and upon the death of both he bequeathed the residue to trustees, named, in trust for the establishment of a department of clinical surgery, expressing his expec-

2 D. & C.

Hunter's Estate.

tation and desire that it should be established and conducted by his trustees with the aid and assistance of the University of Pennsylvania, unless said University should fail to provide an appropriate site for the buildings in which to house it, or should fail or refuse to enter into covenants satisfactory to his trustees, in which case the testator provided that they should have authority, in their discretion, to substitute instead of the University of Pennsylvania some other medical college or institution which would be willing to make arrangements satisfactory to them, or to purchase an appropriate site, erect appropriate buildings thereon and equip the same as in the will directed, carrying out the object and intent of the trust.

The auditing judge found that the rule which makes a gift void because of remoteness has no application to the provisions of the will under discussion, and as we agree with his conclusion, it seems unnecessary to amplify what he has said in his adjudication, except to emphasize the fact that the gift, in the first instance, is not a gift to a designated charity, but to trustees to establish a charity, and while the testator expressed his *expectation and desire* that the University should aid and assist in conducting the charity provided for by the will, he did not so direct, but left the selection of this or some other similar institution, or the establishment of a new one, to the discretion of the trustees. It also may be well to point out that in Penrose's Estate, 257 Pa. 231, urged upon us by counsel for the exceptants, the primary beneficiaries of the estate in remainder were the issue of the testator's son, and there was the possibility that the remainder might not vest within the time limited by the rule, and the alternate gift to charity became effective only in the event of an indefinite failure of issue, which is a very different case from the one before us. Here, there is no alternate gift; upon the death of the testator his estate in remainder vested for the benefit of a charitable use, subject only to postponement until the death of two persons in being at the time of his death, namely, his wife and daughter. In addition to the cases cited by the auditing judge, see Lennig's Estate, 154 Pa. 209; Schrack's Estate, 26 Dist. R. 708, and Edwards's Estate, 255 Pa. 358; and on the point that the exceptants are not parties in interest, see Klein's Estate, 26 Dist. R. 476; Capper's Estate, 21 Dist. R. 1085.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LAMORELLE, P. J., and GEST, J., did not sit.