## Lennig's Estate. Fullerton's Appeal.

*Wills—Accumulations—Act of April* 18, 1853.

A direction in a will that a portion of the income from the residue of the estate shall be accumulated to secure payment of a certain sum to a charity, does not violate the act of April 18, 1853, although the direction results in the adult children of the testator participating in the income accruing from the accumulations of the residue.

*Charity—Perpetuity—Act of May* 9, 1889.

A charitable trust taking effect on a remote contingency in derogation of another charity, even though it involves a change of trustee, is valid. In Pennsylvania, under the act of May 9, 1889, P. L. 173, a gift to a charity is not void, although it transgresses the rule against perpetuities.

*Judicial notice of income yielding quality of fund.*

It seems that the court may take judicial notice of the income yielding quality of a fund brought before it for administration.

Testator directed that, after the death of his wife and children and the payment of certain legacies, the income of the residue of his estate should be paid to a charity until the annual payments should amount to a total sum of $20.000, after which he directed that the whole of the residue should be paid to another charity.  The residue amounted to over $600,000. *Held*, that the court might take judicial notice of the fact that the gift to the second charity would take effect before the expiration of twenty-one years after the termination of lives in being.

Argued Jan. 26, 1893.  Appeal, No. 108, Jan. T., 1893, by Williamina Fullerton, Joyeuse L. Sweet, formerly Fullerton, and Williamina Thudichum, from decree of O. C. Phila. Co., Jan. T., 1891, No. 142, dismissing exceptions to adjudication. Before Paxson, C. J., Sterrett, Green, Williams, Mc-Collum, Mitchell and Dean, JJ.

Audit of account of Nicholas Lennig et al., executors of Charles Lennig, deceased.    •

The following adjudication was filed by Penrose, J. :

"The decedent died, as represented to the court, January 22, 1891.  By his will with codicils, after specific gifts to his wife, Williamina L. Lennig, as there set forth, after directing his executors to 'pay and turn over' to the trustee of the residuary estate, The Pennsylvania Company for Insurances on Lives and Granting Annuities, all stocks, bonds, etc., not specifically disposed of, and the net income of the estate as realized and the net proceeds thereof from sales of real estate by the executors, and after an annuity of $8,000 to his wife for life, and one of $2,500 to his daughter, Williamina Thudichum, for life, it is provided as follows : 'In any one year when the net income shall exceed the aggregate of the herein designated annuities, then I direct . . . . that two-thirds of such excess be divided and paid, one-third of the two-thirds to my wife, Williamina, during her natural life, the other two-thirds of the aforesaid two-thirds to be divided into three equal parts, one of each of which to be paid to my daughter, Williamina Thudichum, during her natural life, the other two divided and paid to my two sons, Nicholas Lennig and John B. Lennig, during their natural lives; at the decease of either one of these three, the share of this

that would have fallen to her or him thus deceased to be equally divided amongst the survivor or survivors of them; the one-third of the undivided net income to be invested as residuary estate.'

"Following this are legacies to grandsons, payable at majority, with intermediate gift of income, viz., $10,000 to Charles L. Thudichum and $12,500 to Alexander Arnoys; and annuities of $300 per annum each to granddaughters, Joyeuse L. Fullerton and Williamina Fullerton, until the death of their father, William Fullerton, when the annuities are to cease and each of them is to receive a legacy of seven thousand five hundred dollars.

"The grandchildren thus named are, as represented to the court, all of full age, and entitled, therefore, to present payment.

"Legacies payable at the death of the wife are given ' to the Hospital for the Insane of Philadelphia the sum of $5,000; to the Pennsylvania Hospital and to the German Hospital of Philadelphia, to each one of them the sum of $10,000; to the Mercantile beneficial association, the "Merchants' Fund," of Philadelphia, the sum of $5,000.'

"At the death of the wife, sons, and daughter, and after payment of the foregoing, the trustee is directed to pay to the president and directors or trustees of the ' Academy of Natural Sciences of the City of Philadelphia,' semiannually, the net income of the ' then residuary estate until such payments shall have amounted to a total sum of $150,000 to be . . . . invested . . . . and the income used for the purposes and objects of said academy, said fund to be held under the designation of the "Charles Lennig fund."'

"A codicil reduces the amount thus to be paid from $150,000 to $20,000.

"After this provision the will thus proceeds:

"'Upon completion of the devise to the Academy of Natural Sciences, I give and bequeath, and herewith order and direct my trustees to realize, pay, or hand over moneys or securities of my residuary estate of the value of $500,000 to the trustees or the Faculty of the "University of Pennsylvania of the City of Philadelphia," in trust, to be by them held or invested . . . . the net income thereof to be used in connection with the John H. Towne bequest . . . . for the acquisition of scientific works,

structures, instruments, machines, and material, and the prac-
tical use and application thereof to technologic instruction in
practical mechanics, the said fund to be called " Charles Lennig
Fund in aid of Instruction in Theoretical and Practical Me-
chanics; " and I further direct my trustees to pay over and be-
queath to the said trustees or faculty of the University of
Pennsylvania the sum of $200,000, in trust, for the proper and
safe investment thereof, and to apply the net income thereof to
the institution of as many free scholarships as such income will
maintain (excluding therefrom scholarships in theology), such
scholars to be selected without regard to nationality or faith, by
the faculty, but only among such male or female applicants as
exhibit undoubted talent and application, of good moral stand-
ing, and who, for want of means, would be prevented from pur-
suing the needful course of instruction, towards which the faculty
may contribute to the maintenance of each such student out of
this fund an annual sum not exceeding $350 while pursuing
the university regular course, in no case to exceed a period of
five years; such beneficients to obligate themselves on honor,
if ever able, to refund into this fund any sums advanced to
him, her, or them; the use of tobacco in any form, or intoxi-
cation, to preclude admission to the benefit of this bequest, and
cause immediate dismissal upon indulgence therein after admis-
sion.    This fund to be called the " Charles Lennig Beneficiary
Fund."

" ' Any balance remaining upon the completion of the afore-
said devises I direct and order my trustee to distribute and pay
over share and share alike, amongst and to any of my legal de-
scendants then living, the sons and daughters of my daughters,
Williamina Thudichum and Joyeuse Arnoys, my sons Nicholas
and John Boulinger Lennig, and none others, and in default of
any such claiming and proving their interest within one year
after three months' summons in six of the principal newspapers
of this city and New York, then the said balance to be divided
and paid share and share alike, one half to the trustees of the
University of Pennsylvania, to be invested for the use of the
free-scholarship fund aforenamed, the other half to be divided,
one half to the use of the German Hospital, and the balance to
the Pennsylvania Hospital, of Philadelphia.'

" It was stated by Messrs. Freedley and Hart that there are

outstanding claims by New York creditors, amounting to from $35,000 to $50,000, but that the real estate held subject to the power of sale given to the executors was ample to meet them, and no part of the estate embraced in the account need therefore be withheld from present disposition.

" Two assignments have been made by Charles L. Thudichum: one to Nicholas Lennig et al., for $3,500, and, subject to this, one for $2,000 to Aaron I. Sansom, the latter without interest.

" Mrs. Williamina L. Lennig, the widow of testator, has elected to take against the will. . . .

" Mr. Townsend, on behalf of Mrs. Thudichum and the Misses Fullerton, and Mr. Mellors, on behalf of Alexander Arnoys, contended that the accumulation directed by the will is in violation of the act of 1853 ; and that the gifts to the charities and the lineal descendants are invalid, because they infringe the rule against perpetuities.

" 1. The primary purpose of the accumulation resulting from the addition of one third of the surplus income in each year to the residuary estate was the creation of a fund large enough to secure payment of the $700,000, given to the University of Pennsylvania ; and the limitation to the descendants of the testator then living is only of the excess, if any, beyond that amount. The act of 1853 expressly excludes from its operation ' any donation, bequest, or devise for any literary, scientific, charitable, or religious purpose ;' and it provides also that an accumulation shall be void [only] 'so far as it shall exceed the limits of ' the act. In this respect there is a wide difference between the gift infringing the rule against perpetuities, which is void in toto, and a trust for accumulation, which is good to the extent that it does not transgress the statute : Brown v. Williamson, 12 Casey, 338. Hence, so long as the accumulation does not swell the residue to an amount larger than the sum required for the charity, it is not forbidden : the act will only apply to a continuance of the accumulation after this purpose has been accomplished ; and such excess will then go ' to and be received by such person or persons as would be entitled thereto if such accumulations had not been directed.' It is not alleged that the limit has yet been reached.

" It is true that adult children of the testator will participate in the income accruing from the accumulations of the residue ;

but the language of the act excluding from its operation gifts to charities is most general and comprehensive. 'Any.' donation, etc., for 'any' religious or charitable purpose shall 'not' come within the prohibition. As was said by Judge AGNEW in Turnpike Co. v. McNamara, 22 Smith, 280, 'language could not be broader, and no exception or qualification is to be found in the act.' What authority is there, therefore, for saying that a donation to a charity which permits the intermediate participation by individuals in a merely temporary incident of the accumulation does come within the prohibition in spite of these words of exclusion?

"If, however, the act is thus contravened, it affects only the interest of the accumulations so far as it is given to individuals, giving it instead to the children and issue of deceased children of the testator under the intestate laws; but as no such interest has yet been accrued the question with regard to it is not now before the court.

"2. It is quite clear that the gift of the income of the residuary estate to the Academy of Natural Sciences, until it shall have received $20,000, does not infringe the rule against perpetuities, whatever may be said of the ultimate limitations to the University of Pennsylvania, etc. It takes effect immediately at the expiration of lives in being at the death of testator; and an interest which thus begins is not obnoxious to the rule, though it may end at a very remote time. Gray on Perp., sec. 232; Lawrence's Estate, 21 Crum. 365–6.

"As this would require the estate to remain in the hands of the trustee, the consideration of the gifts to the University is perhaps unnecessary; but as the question of their validity has been raised and the necessary parties are before us, it is proper now to dispose of it.

"It is said that as these gifts are not to take effect until the accomplishment of the intervening provision for the Academy of Natural Sciences, they may thus be deferred for more than twenty-one years, etc., after the termination of lives in being, and therefore the gift is void. The fallacy of this lies both in the premises and in the conclusion. The residuary personal estate, after all deductions have been made, will amount to not less than $275,000, and as this, at even one per cent, would yield $2,700 per annum, not more than eight years would be

required for the payment of the $20,000.   But there is also real estate valued at $350,000 ; so that in all probability not more than two or three years would be required.   It can at least be said with judicial certainty (unless the court has no right to take notice of the income-yielding quality of a fund brought before it for administration) that the specified sum will be raised and the ultimate gift thus become payable long before the expiration of the term permitted by the rule.

" If, however, the court is not permitted to see what cannot help being seen, and if (assuming what is scarcely assumable, that the legacies to the university are not vested with simply a deferring of possession—though they are dependent upon no contingency whatever) the limitations following the gift for the Academy of Natural Sciences would be invalid if in favor of an individual, it is by no means to be admitted that the gifts to the charity would be similarly affected.

" The gifts to the charity and the gift to the descendants of the testator, as already remarked, are entirely separable—the latter not taking effect at all until the charitable legacies have been paid in full ; and hence there is no difficulty in upholding one, although the other fails.   See Gray on Perp., sec. 341, etc.

" It was decided in Christ's Hospital v. Grainger, 16 Sim. 83, that a charitable trust taking effect on a remote contingency in derogation of another charity, even though it involved a change of trustee, was valid.   The decision, which has been approved in Odell v. Odell, 10 Allen, 1, and Jones v. Habersham, 107 U. S. 174, 175, has been accepted by the text-books as settling the law, and, as Mr. Gray says, it ' has stood so long unquestioned that it is likely to be followed : ' Perp., sec. 599, et seq.   It is true that he criticises it and suggests that in a jurisdiction not bound by decision the question should receive careful consideration ; but this is said especially with reference to the decision that the change of trustee did not affect the question of legality, and he admits (sec. 597) that the case is much stronger in favor of the ultimate charity, where, as here, there is no change of trustee, and, therefore, no change in the legal estate.

" But whatever may be thought of Christ's Hospital v. Grainger, or of the soundness of the reasoning of Lord COTTENHAM, by whom the opinion was delivered, the question it would seem

is no longer an open one in Pennsylvania, where the legislature has come to the relief of the judiciary by passing the act of May 9, 1889, P. L. 173, Purd. 2450, which in the most unequivocal terms declares that a gift to charity shall not fail because transgressive of the rule against perpetuities : 'No disposition of property made for any religious or charitable use shall fail . . . . by reason of . . . . being given in perpetuity,' etc."

The entire balance of the principal account, after directing the one third in kind to the widow, and the legacies presently payable, together with collateral inheritance tax and other expenses, was awarded to the Pennsylvania Company for Insurance on Lives and Granting Annuities in trust for the purposes set forth in the will.

Exceptions to the adjudication by appellants were dismissed.

*Errors assigned* were in dismissing exceptions, quoting them.

*Chas. C. Townsend* and *J. B. Townsend, R. Mason Lisle* with them, for appellants, cited : De Renne's Est., 12 W. N. 94 ; Williamson's Est., 143 Pa. 155 ; Biddle's Ap., 99 Pa. 525 ; Oddie v. Brown, 4 De Gex and Jones, 179 ; Provenchere's Ap., 67 Pa. 468 ; Van Beuren v. Dash, 30 N. Y. 393 ; Ludlam's Est., 13 Pa. 88 ; Palmer v. Holford, 4 Russ. 403 ; Darbyshire's Est., 99 Pa. 525 ; Coggin's Ap., 124 Pa. 29 ; Hillyard v. Miller, 10 Pa. 326 ; Phila. v. Girard's Heirs, 45 Pa. 9 ; Leake v. Robinson, 2 Mer. 363 ; Coster v. Lorillard, 14 Wend. 265 ; Root v. Stuyvesant, 18 Wend. 278 ; Vance's Est., 141 Pa. 209 ; Roger's Est., 43 Leg. Int. 292 ; Franklin's Est., 27 W. N. 545, opinion by PENROSE, J.

*Arthur Biddle* and *Richard C. McMurtrie*, for the University of Pennsylvania, cited : Wilson v. Wilson, 28 L. J. Ch. 95 ; Herbert v. Webster, 15 Ch. D. 610 ; Harbin v. Masterman, L. R. 12 Eq. 559 ; Butler v. Butler, 9 Phila. 269 ; Stille's Ap., 4 W. N. 42 ; Hobson v. Hale, 95 N. Y. 589 ; Brown v. Williamson, 36 Pa. 338 ; Green v. Gascoyne, 4 De G. J. & S. 565 ; Wetherall v. Thornburgh, 8 Ch. D. 261 ; Oddie v. Brown, 4 De G. & J. 179 ; Nettleton v. Stephenson, 3 De G. & S. 366 ; Jones v. Habersham, 107 U. S. 174 ; Chamberlayne v. Brockett,

L. R. 8 Ch. Ap. 206; Sergeant's Case, 11 Phila. 8; Thorndike v. Loring, 15 Gray, 391.

*John G. Johnson,* for the Pennsylvania Company for Insurances on Lives and Granting Annuities, cited: Coggin's Ap., 124 Pa. 30; Hillyard v. Miller, 10 Pa. 326; Lawrence's Est., 136 Pa. 363; Gray, Perp., §§ 201, 205, 209, 210, 251.

*Charles Hart,* for Nicholas Lennig, an appellee, did not take part in the oral argument.

PER CURIAM, February 6, 1893:

While this is an interesting and important case, we think it has been sufficiently discussed by the learned auditing judge, and we affirm the decree for the reasons there given by him.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.