## Duffy's Estate.

Argued October 6, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James S. Crawford,* of *Patterson, Crawford, Arensberg & Dunn,* for appellant, Peoples-Pittsburgh Trust Company.

*Lee C. Beatty,* for appellant, William James Duffy.

*E. J. McKenna,* of *McKenna & McKenna* and *William Macrum,* for appellees.

OPINION BY MR. JUSTICE MAXEY, November 27, 1933:

The question in this case arises from the interpretation of a clause in the will made by Thomas A. Duffy who died on June 24, 1908. He left to survive him a son, William James Duffy, one of the appellants, and a daughter, Sara Cunningham Duffy Border, both of whom are still living. The fifth clause of the will reads as follows: "Fifth:—All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and nature and wheresoever situate, of which I shall die seized or to which I shall be in any way entitled at my death, I do give, devise and bequeath unto the Safe Deposit and Trust Company of Pittsburgh, in trust, to invest and keep invested in good and lawful securities, with power to change the same at any time and from time to time and reinvestments make in like good and lawful securities, according to its own sound judgment and discretion; and the income therefrom to receive and collect, as and when the same arises and is payable, and after paying thereout all necessary and proper costs, charges and expenses, to pay one-half (½) of the net income remaining unto my son, William James Duffy, for and during his natural life. The other one-half (½) of said net income shall be added annually by said trustee to the corpus of the said trust fund, and upon the death of the said William James Duffy, either with or without lawful issue or the issue of any deceased child or children living to survive him, the whole of said trust fund shall be divided into three (3) equal shares, and I hereby give, devise and bequeath, absolutely, one share each to St. Paul's Roman Catholic Orphan Asylum of Idlewood, Allegheny County, Pennsylvania, the Little Sisters of the Poor of Pittsburgh, Penn Avenue, Pittsburgh, Pennsylvania, and the Home of the Good Shepherd of Allegheny, Pennsylvania."

When the account was filed it showed that the trustee had paid to the son, William James Duffy, from the inception of the trust, one-half of the net income on the entire corpus of the trust *as increased annually after the first year by the addition to the fund of the other half of the income.* The three charitable institutions, to wit, St. Paul's Roman Catholic Orphan Asylum, the Little Sisters of the Poor, and the Home of the Good Shepherd of Allegheny, filed exceptions to the account involving the interpretation of the fifth clause of the will (and also other questions which need not be considered here). Two of the exceptions raised were whether the son, William James Duffy, was entitled to receive from the trustee half the income on the entire trust fund as annually augmented and increased or whether his income was limited to one-half the income on the original corpus. The examiner found that if the son was entitled to one-half of the income on the original corpus only, that the trustee had overpaid him, inclusive of interest, in the amount of $3,809.52. The auditing judge filed an opinion holding the accumulations of the income were unlawful and violative of the prohibition of the Act of April 18, 1853, P. L. 503, section 9, 20 P. S., section 3251, and that the wrongful accumulation belonged to the testator's next of kin: the son, William James Duffy, and the daughter, Sara Cunningham Duffy Border. A decree of distribution was thereupon entered, in which the accountant-trustee was surcharged in the amount of $3,-809.52, as an overpayment by the trustee to William James Duffy, as beneficiary, and this amount was distributed in equal shares to William James Duffy and his sister, as next of kin. To this finding of the auditing judge exceptions were filed by all parties in interest, i. e., (1) by the accountant-trustee on the ground that the son, William James Duffy, was rightfully entitled under the will to the $3,809.52 paid him by the trustee, and same should not be surcharged to the trustee as an over-

payment, and on the further ground that if the court was correct in holding the entire accumulation invalid, then the son was entitled to take as life tenant under the terms of the will; (2) by William James Duffy on the ground that he was entitled to the item of $3,809.52, and that if the accumulation was bad he was entitled to half of the entire amount of the accumulation; and (3) by the charitable institutions on the ground that the accumulations were valid and that they were entitled to be credited with all of the income thereon. The court in banc reversed the decision of the auditing judge and held that the accumulation was valid, and that testator's son, William James Duffy, was entitled to receive only one-half of the income from the trust fund as it was when it came into being after the testator's death. On the same day the court entered a decree sustaining the exceptions of the charitable institutions, dismissing the exceptions of the trustee, and of William J. Duffy, and amending the decree of distribution entered March 22, 1933, by striking out the distribution of $1,904.76, made to William James Duffy, and of a similar amount to Sara Cunningham Duffy Border, and awarding the total sum of $3,809.52 to the trustee under the will, to be held for the benefit of the charitable institutions. To this decree an exception was taken. This appeal followed.

The question may be stated this way: When William James Duffy received one-half of the net income from the trust fund as it was at the time it came into being, and the other one-half of this net income was added annually by the trustee to the corpus of the trust fund, should the son afterwards have received (as he did) in addition to this one-half of the net income of the original corpus, also one-half of the net income on the accretions to that corpus? To put it concretely: If the original corpus of the trust fund was $10,000 and if it had been so invested as to yield annually 5% interest, Duffy should have received at the end of the *first* year one-half of the annual

yield of $500, i. e., $250, but at the end of the second year should he have received *also* one-half of the 5% income (i. e., $6.25) on that accretion of the other $250 added at the end of the first year to the original corpus, and should he at the end of the third and succeeding years have received correspondingly increased incomes? He contends that he should; the three charitable institutions named in the will contend that one-half of the net· income should have been added each year to the corpus of the estate and that all the succeeding annual yields from this income should have remained intact as part of the corpus until Duffy's death, when the whole of the trust fund is to be distributed.

Appellant Duffy's contention is that the testator intended to give him, the life tenant, one-half of the income from the original trust fund plus its accumulations, that the direction to accumulate for the benefit of Duffy (who was of full age when the trust fund was created) is unlawful under the Act of 1853, supra, and therefore as to accumulated income the testator died intestate, and this accumulation goes by operation of law to his next of kin, the daughter and son, the latter being the appellant.

In construing wills the following are established principles: "The presumption is that a testator intends to dispose of his entire estate and not die intestate as to any part of it. The duty of the court is to so construe a will that no intestacy, partial or entire, will occur": Gerheim's Est., 88 Pa. Superior Ct. 530; Ostrom v. Datz, 274 Pa. 375, 118 A. 313; Worst v. De Haven, 262 Pa. 39, 104 A. 802.

"A construction which will satisfy the language used without leading to absurd or inconvenient results is to be preferred, still more so if the opposite construction will defeat ·the will altogether, and divert the bounty of the testator from those whom he manifestly intended to benefit and give it to persons whom he thought he had already sufficiently provided for": McBride's Est., 152 Pa. 192, 25 A. 513.

"Nothing contrary to law can be implied": 1 Jarman on Wills, 5th Am. ed., pages 524-40. "Where a will admits of two constructions that is preferred which will render it valid": 2 Jarman on Wills, page 842.

Does the language of the fifth paragraph compel a construction which will render it partially invalid and incidentally result in making the daughter to whom the testator bequeathed only $1, a beneficiary of the estate to the extent of at least $1,904.76? If the language fairly admits of no other construction we will have to follow it even though it should lead to partial intestacy.

We find that not only is no such construction required by the language of paragraph five, but that the construction which will make all of the provisions of this paragraph legally effective is the only sound construction grammatically. The testator when he formulated the fifth paragraph or accepted it as written by his counsel, evidently from the language used had in mind these several distinct concepts: (1) The trustee would have all of the residue of the estate and collect the income therefrom. (2) Out of the income from this residue the trustee should pay costs, charges and expenses and "of the net income remaining" the trustee should pay one-half thereof to William James Duffy for and during his natural life. This direction is clear and definite and that there are no qualifying phrases attached to it is indicated by the fact that the direction ended with a period. (3) Having disposed of one-half "of the net income remaining" the testator proceeded to dispose of the other one-half of "the net income remaining." This second one-half, testator directed should be "added annually to the corpus of said trust fund." The language used here reveals that the testator then had in mind two things: (a) the "corpus of the trust fund" and (b) an annual addition to it consisting of one-half of the net income of the corpus remaining after payment of expenses. That the testator conceived of the corpus as consisting of two parts is indicated by his use of the word "whole" in the

second subparagraph of the fifth paragraph of the will, for he says, after providing for the annual addition of one-half of the net income to the corpus, "upon the death of the said William James Duffy......the *whole* of said trust fund shall be divided into three equal shares," etc. "Whole" is defined as "comprising all of the parts": Webster's New International Dictionary. If the testator had not conceived of the corpus in its final form as consisting of the original residue *and* the annual accumulations finally integrated together but had conceived of the ultimate trust fund as having been at all times a unit, the phrase above quoted should have been written: "upon the death of the said William James Duffy ......said trust fund shall be divided," etc. We must assume that the word "whole" had some function in this subparagraph. "That construction [is] favored which will render every word operative rather than one which makes some words idle and negative": 25 R. C. L., page 1008, section 247; Com. v. Duane, 1 Binn. 601. The function of the word "whole," as here used, is to show that the two parts, i. e., the original fund and its accumulations, were to be integrated into a unit before the prescribed division was made.

The trustee-appellant contends that the fact that the will directs (as the trustee interprets it) the periodical payment of a part of the income as it accrues on the accumulated income, does not result in an unlawful accumulation. Whether it is lawful under the Act of 1853 to accumulate "rents, issues, interest or profits on real or personal property" so that a person of full age may have *not* these "rents, issues," etc., themselves *but half* of the income from them, we need not here decide, for under our interpretation of the will it does not direct the payment to the son of half the income from these accumulations. Our holding is that out of the residue of his estate the testator carved out a particular life interest for the son, to wit, one-half of the net income of the trust fund as it was at the time of its creation. On the above question,

not here decided, see Lennig's Est., 154 Pa. 209, 25 A. 1049.

It is apparent to us that the testator desired that the income from his residuary estate should be divided equally: one-half to his son and one-half to the three institutions named, the only difference being that he put his son into *immediate* posssession of the one-half of the net income while the possession by the institutional recipients of the other one-half was deferred. By way of compensating these other recipients for the deferring of their possession of one-half of the income, he directed that this half be added to the corpus of the estate to be divided among the three institutions when William J. Duffy should die. This was obviously a fair arrangement, while under the interpretation the trustee-appellant contends for, William J. Duffy would be given not only one-half of the net income from the residue of the estate but also one-half of the annual net income derived from one-half of the accumulated incomes from the residue of the estate, and under the interpretation Duffy contends for this one-half of the annual net income derived from one-half of the accumulated incomes from the residue of the estate constituted a void accumulation, which belongs to the next of kin, i. e., the daughter and himself. This would give William J. Duffy more than one-half of the net income on the trust fund as originally created and would also give his sister, who was cut off by the testator with one dollar, a substantial share of the estate. All this was obviously far from the testator's intention. The court below aptly said: "His [the testator's] principal concern and object were to build up a substantial estate for the charities. They have vested interests in the entire principal fund and one-half of the income as it accrues annually. No part of this one-half is payable to the son. The interest of the son is fixed at one-half of the net income [of the original trust fund]."

The construction given to the fifth paragraph of this will by the court below is consistent with the rules of

110

good grammar, comports with what was obviously testator's idea of a fair division of income between his son and the institutional beneficiaries, and places none of the testamentary directions outside the pale of legal sanction.

The decree is affirmed at the cost of appellants.