Brennan's Estate.

Argued October 8, 1936. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

412

*Charles A. Poth,* with him *Chas. D. Gillespie,* for appellant.

*James Nugent, Sr.,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 23, 1936:

John Brennan died December 23, 1913, survived by his wife, Alice Brennan, but leaving no issue. The parties were married in 1873 and lived together for forty years. Decedent executed his last will a few hours before his death. It is dated December 22, 1913, and was probated January 8th, 1914.

By the first item of his will he gave to his wife $10,000 and all of his household goods absolutely. He then made seven cash bequests to clergymen for masses, totaling $2,350. Then followed the ninth and tenth paragraphs of the will, the interpretation of which is here before us. They read as follows:

"Ninth: All the rest, residue and remainder of my estate I give, devise and bequeath to my wife, Alice Brennan, with the right to sell and dispose of any of my real estate, with authority to make any and all deeds, conveyances and assurances, and execute the same, according to law, and holding the purchaser thereof free from any liability as to the application of the purchase money.

"Tenth: After the death of my wife, I give the remainder of my estate in equal shares to my sister-in-law, Bridget Sweeney, to my brothers, Richard Brennan and William P. Brennan, and my niece, Mary Ellen Griffen, to them and their heirs and assigns forever."

By the eleventh paragraph testator appointed his wife executrix and stipulated that "she be not required to file any bond, inventory or account whatsoever."

Following her husband's death, the widow took possession of all the assets of his estate, which included both real and personal property worth approximately $37,-220.58. There was in addition one parcel of real estate

appraised at $6,000. She possessed no property other than this principal amount received from her husband at the time of his death. She died on September 9, 1932, without having filed any inventory or accounting of the estate. Her own estate at the time of her death consisted wholly of the residue of the estate of the husband, and was composed of approximately $28,000 of personalty and $6,000 of realty. She left a will wherein she appointed William P. Brennan as her executor and devised all the property in her hands to certain legatees, treating the residue of her husband's estate as though it were her own absolutely.

The Potter Title and Trust Company obtained letters of administration d. b. n. c. t. a. upon the estate of John Brennan and cited the executor of the widow's estate to file an account of the estate of John Brennan in his hands. Her executor claimed that the widow received an absolute estate from her husband and was therefore under no duty to account. The Orphans' Court, however, ordered an accounting which the executor of the widow subsequently filed, showing a balance for distribution of $26,027.59. Following the audit of this account, the court decreed distribution of the entire balance to the Potter Title and Trust Company as administrator, holding that the widow had only a life estate under her husband's will, with power to consume, and the provision in the husband's will for a remainder over to named relatives after his wife's death became effective. From the dismissal of his exceptions to this decree of the court below, the executor of the widow's estate has appealed to this court.

The question raised by this appeal is whether under the will the widow took the remainder of her husband's estate absolutely, or whether she acquired a life estate only with power to consume.

In attempting to reconcile the apparently conflicting provisions of this will, our primary aim must be to ascertain and give full effect to the intention of testator as it

appears from the four corners of the will. "In constru-
ing wills the courts are always searching for the testa-
tor's true intent": *Swentzell's Est.,* 294 Pa. 261; see
also *Allen v. Hirlinger,* 219 Pa. 56; *Yates's Est.,* 281 Pa.
178; *Stanton v. Guest,* 285 Pa. 460; *Torchiana's Est.,*
292 Pa. 470; *Mereto's Est.,* 311 Pa. 374; *Scott's Est.,*
313 Pa. 155. At the same time, as has often been stated,
every will is in a sense unique, and for this reason prece-
dents are of little value, for words used in differing cir-
cumstances have varying meanings: *Kirkpatrick's Est.,*
280 Pa. 306; *Reiff v. Pepo,* 290 Pa. 508; *French's Est.,*
292 Pa. 37; *Kidd's Est.,* 293 Pa. 56; *Boyer v. Campbell,*
312 Pa. 460. "Each will is its own best interpreter, and
the construction of one is no certain guide to the mean-
ing of another": *Williamson's Est.,* 302 Pa. 462, 466;
*Scott's Trust,* 322 Pa. 1.

However, the situation which confronts us here was
given careful consideration recently by this Court in
*Byrne's Est.,* 320 Pa. 513. In that case testatrix by her
will first gave the residue of her estate to her sister *"ab-
solutely."* She then provided: "Upon the death of my
said sister, R. Philomena Byrne, should any part of my
estate *remain,* I give, devise and bequeath the same to my
beloved niece, Mrs. J. M. Shadle." We held that by such
provision of the will, the sister took only a life estate
with power to consume the principal. Mr. Justice DREW,
writing the opinion of the Court, reviews at length the
cases of this character, and divides them into two
groups, viz.: (1) where the testator shows by clear and
explicit language a controlling intention to give an abso-
lute estate to the first taker, any attempt to cut down
this absolute ownership by limitations over on the death
of the first taker is ineffective;[1] and (2) where the lan-
guage of the whole will clearly indicates that the testa-
tor intended the gift to be a life estate only with power

[1] See cases cited in footnote (1) of Byrne's Estate, supra, (p.
515).

to consume, with the remainder over on the death of the first taker, it will be so construed, although the words of the gift, standing alone, would import absolute ownership in the first taker.[2]

Turning to the will before us, we are of opinion that it falls within the second group of cases described in *Byrne's Estate,* supra, as it appears that testator intended to give his wife a life interest only in his estate, with power to consume the principal while she lived, and upon her death the remainder or unconsumed residue of his estate was then to be paid over in equal shares to the designated beneficiaries.

It is to be observed that in creating the interest of his wife in the remainder, testator did not use words of inheritance or absolute ownership. In this respect the present will more strongly points to an intention to create a life estate than does the one in *Byrne's Estate,* where the gift to the sister of testatrix contained the word "absolutely." No such word was used by this testator in designating the estate which he gave to his wife. It is evident that testator knew how to make a gift of an absolute estate, for in the first paragraph he gave $10,000 and all his household goods to his wife "absolutely and forever," and likewise in the tenth paragraph he gave the remainder to relatives and added, "to them and their heirs and assigns forever." The first, ninth and tenth paragraphs considered together, show definitely, therefore, that testator meant to give his wife an estate for life only in his property.

The construction urged by the appellant would render inoperative the entire tenth paragraph of the will. As was pointed out in *Byrne's Estate,* supra, (p. 519), this is counter to the established rule that a construction is to be sought which will, if possible, render every word of a will operative, rather than have some words become

[2] See cases cited in footnote (2) of Byrne's Estate, supra, (p. 516).

416

idle and nugatory. "It is a well understood rule of construction that effect must be given, if possible, to every part of the will and to all the words used by testatrix": *Clark v. Dennison,* 283 Pa. 285; *Conner's Est.,* 302 Pa. 534; *Bumm's Est.,* 306 Pa. 269; *Duffy's Est.,* 313 Pa. 101.

It is apparent from the will that testator desired to make full provision for his wife during her lifetime and intended to give her the right to use such portion of the principal of his estate as might be necessary for her comfort and maintenance. Under such circumstances a power to consume the principal is primarily a matter of the testator's intention, and although not expressly given, will be implied where necessary to carry out that intention: *Hege v. Ickes,* 267 Pa. 57; *Houser v. Houser,* 268 Pa. 401. He gave her the right to sell any of the real estate and convert it into cash. He relieved her of any obligation to file a bond, inventory or account. These provisions show plainly his intention that his wife should be empowered to control, manage and use the estate as she pleased during her lifetime. What uses she made of it while she lived were matters that concerned her alone, free from interference or challenge from anyone, but the conclusion is inescapable that whatever portion of his estate was not expended or consumed by the widow during her lifetime was to go to his relatives as provided in the will.

It follows that as the widow took only a life interest she had no power to dispose of the residue of the estate of her husband at her death, and the court below properly awarded the balance of the estate to the administrator d. b. n. c. t. a. of the estate of John Brennan.

The order of the court below is affirmed, costs to be paid out of the estate.