## Adamson's Estate

512

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

The facts appear from the following excerpts from the adjudication of

HUNTER, J., auditing judge.—This trust arose under the will of William Adamson, who died June 16, 1879, whereby he directed the division of the residue of his estate, including the share held for his wife at her death, into as many shares as he shall leave children, and a deceased child's issue, and gave the shares of his daughters to his trustee, in trust, to pay the income to each during her natural life:

". . . And from and after the death of each of my said daughters in trust, as to the principal sum or other property held upon said trust, in case any daughter shall die leaving a husband or children her surviving, to pay or transfer the same to such person or persons as such daughter may direct by her will or instrument in the nature thereof; and in default of will capable of operating on the contingency above mentioned then in trust for such persons as would be entitled to the property of my said daughter had she died the absolute owner thereof."

The fund accounted for is the share of Mary E. Adamson testator's last surviving child, who died March 29, 1946, unmarried and without issue of her body.

She married July 11, 1885, but divorced her husband soon thereafter and resumed her maiden name.

Mary E. Adamson while a resident of Florida presented her petition to the Circuit Court of the Eleventh Judicial District in and for Dade County, Fla., in which she recited:

". . . that she desires to adopt a child and make it her child and heir-at-law in order that petitioner may dispose of a trust estate of which she is now beneficiary under her father's will, and in order that said child may be one of the beneficiaries named in petitioner's will."

Whereupon said court entered the following decree dated July 18, 1939:

"IT IS ORDERED AND ADJUDGED that the said Nancy Cooper Kennickell be, and she is hereby declared to be adopted by the said petitioner, Mary E. Adamson, and the said Nancy Cooper Kennickell is also hereby made the child and heir-at-law of the said Mary E. Adamson in all respects and to the same extent as if she had been born to the said Mary E. Adamson in lawful wedlock. The name of said child is hereby changed to Nancy Cooper Kennickell Adamson."

*Is the adopted child of Mary E. Adamson a "child" within the meaning of the will?*

The power given by the will is a general testamentary power but is conditioned upon the daughter leaving "husband or children".

In Corr's Estate, 338 Pa. 337, it was decided that a power of appointment among "children and descendants" did not include a person subsequently adopted by the donee of the power. The question in construing the word "children" as used in a will, is not the rights of inheritance of an adopted child under the intestate laws, but his rights, if any, under the terms of the will. The word "children" as used in a will means "natural-born children" unless the testator shows that he intended to extend the meaning. See also Puterbaugh's Estate, 261 Pa. 235 and Yates' Estate, 281 Pa. 178.

In Corr's Estate, as in the instant case, testator died before the effective date of the Wills Act of June 7, 1917, P. L. 403, so that the act has no application. Even if it did apply it would not help the adopted child because 16(b) provides that where the gift is to the child of another than testator the adoption must take place before the date of the will.

It is contended, however, that the cases above cited have no application because testator makes no gift to the children but merely makes the power conditional upon the wholly unrelated fact of there being husband or children—that if Mrs. Adamson was so survived she had a general power and could have appointed to strangers and omitted her children. Testator, it is argued, having shown no desire to restrict the appointment to blood relatives, he must have intended a broader meaning for the word "children", so as to include any person between whom and one of his own children the legal relationship of parent and child existed.

I cannot follow this argument because, while he left the distribution to the discretion of his daughter, he must have had in mind that she would in all probability make an appointment to her husband or children. According to the rules of law he did not contemplate an adopted child, and this intention should control the disposition of the property whether his gifts were direct or indirect to the ultimate beneficiaries of the power. In my opinion testator has not evidenced an intent to broaden the normal meaning of the word "children".

It is also contended that the Florida decree of adoption created in the adopted child the status of a natural child.

A decree or statute of another State cannot alter our laws of distribution.

In Zoell's Estate, 345 Pa. 413, where the question was the right of a child, adopted in Ohio, to inherit personal

property from a natural relative dying intestate in Pennsylvania, Mr. Chief Justice Schaffer said (p. 415):

"The full faith and credit clause of the Federal Constitution requires us to recognize only her status as adopted. What we are dealing with is a question of descent, not one of status. 'The state of the place of the property, in denying him the right to inherit, is not denying his status as an adopted child, nor even the incident of that status (for rights of inheritance as to property located in the state of adoption are still recognized), but is merely giving effect to its statute of inheritance prescribing the class of persons who shall or shall not take property there located:' 73 A. L. R. 974. To which may be added, that that is the function, solely of the State of the domicile of the intestate or of the property's location. As to personal property, which is what is here involved, it follows the person of the owner and is distributable according to the intestate laws of his place of domicile. The Restatement, Conflict of Laws, Sec. 305(b), thus states the rule: 'If the law of the state of the decedent's domicil allows an adopted child to take a distributive share, a legally adopted child will take a share although the law of the state of adoption or of the state where a chattel is provides otherwise. If the law of the state of the decedent's domicil does not allow an adopted child to take a distributive share, he cannot do so, although the law of the State of adoption or of the state where a chattel is would allow him to take.'"

See also Crossley's Estate, 135 Pa. Superior Ct. 524.

Cases on the status of an illegitimate child, where there is the fact of the actual physical birth of the child are to be distinguished. When the law of the domicile of the parent declares that the child was legitimate at or from birth, that status is recognized everywhere: Thorn Estate, 353 Pa. 603; A. L. I. Restatement of Conflict of Laws §137 et seq., 204.

In my opinion the right of an adopted child to inherit from a Pennsylvania decedent, and as well its right to take under a Pennsylvania will, are both controlled by the laws of Pennsylvania.

I conclude that the adopted child is not a "child" within the meaning of the will, and that the power of appointment which was conditioned upon the survival of "husband or children" did not exist.

*Are creditors and legatees of Mary E. Adamson "persons as would be entitled to the property of my said daughter had she died the absolute owner thereof"?*

This phrase of the will is in conflict with the rest of the sentence which precedes it, and which I again quote:

". . . And from and after the death of each of my said daughters in trust, as to the principal sum or other property held upon said trust, in case my daughter shall die leaving a husband or children her surviving, to pay or transfer the same to such person or persons as such daughter may direct by her will or instrument in the nature thereof; and in default of a will capable of operating on the contingency above mentioned then in trust for such persons as would be entitled to the property of my said daughter had she died the absolute owner thereof."

Could testator have meant, if husband or child survive, his daughter should have a power of appointment, and if husband or child *not* survive, she should, nevertheless, have power to dispose of the property by will?

If this was his meaning then there is a waste of language, because the first part of the sentence which restricts the power need not have been written. The last part would have been a complete disposition in any event.

There is a strong rule of construction against rejecting any part of a will as surplusage.

Brennan's Estate, 324 Pa. 410, 415, refers to: "the established rule that a construction is to be

sought which will, if possible, render every word of a will operative, rather than have some words become idle and nugatory. 'It is a well understood rule of construction that effect must be given, if possible, to every part of the will and to all the words used by testatrix.' "

And again in Irwin's Estate, 304 Pa. 200, 202, the court said:

"We can attribute no intention to a testator of writing meaningless words in his will when another construction gives such words intelligent and proper meaning."

I cannot believe that testator changed his intention while writing this single sentence of his will. The two parts must have been intended as a harmonious whole. He could not have intended that the latter overwhelm the former. He must have intended to put the second part of the disposition beyond the power and control of his daughter, and to have it pass at her death as if she had died intestate.

In my opinion the persons designated by testator to take upon the death of the daughter are her heirs and next of kin under the intestate laws. This is the only construction which gives effect to all the words of the will, and gives sense to testator's entire disposition.

The form of expression whereby heirs are described as persons who would have taken had the life tenant died seized, may be found in many wills about the time of this testator's will, and especially in wills which conferred a power of appointment, and then made a gift in default of its exercise: Karp's Appeal, 75 Pa. 119; Sturgis' Estate, 205 Pa. 435; Biddle's Estate, 3 Dist. R. 736. What testator had in mind are separate contingencies of testacy and intestacy. In the first, appointees take—in the second, heirs under the intestate laws.

I know of no case, testacy and intestacy having thus been provided for, where creditors and legatees have

been held to take under the later expression suggesting an absolute ownership in the life tenant. It is true that in some instances trusts of this nature have been held to be passive trusts, and vested in the beneficiary, but that is not this case, which was an active spendthrift trust, and the power a restricted one.

The claims of creditors and legatees of Mary E. Thompson are dismissed.

*Is the adopted child within the designation of "such persons as would be entitled to the property of my said daughter had she died the absolute owner thereof"?*

As was earlier determined in this adjudication, the adopted child is not a "child" within the meaning of that word. Here we have a broader designation which I have interpreted to mean "heirs and next of kin under the intestate laws".

It is well settled that an adopted child does take under the description of "heir". When a testator commits the distribution of his estate to the intestate law, which makes an adopted child an heir, it is immaterial whether the adoption takes place before or after the date of the will: Johnson's Appeal, 88 Pa. 346; Kohler's Estate, 199 Pa. 455.

The difficulty in the instant case is the necessity of applying two rules of law which lead to different results. On the one hand, I hold that testator did not mean to include the adopted child when he used the word "children". Now, an inconsistent intention is imputed to include the adopted child in an alternative gift to heirs in the same clause.

There is a distinction between these two gifts as made by testator. One refers to a narrow class of "children" the normal meaning of which is natural-born children and not adopted children. The other gift, construed to mean heirs, is a broader gift with the established meaning of those designated by the

intestate laws. One is a restricted gift, the other is unrestricted.

Words used by a testator should be given their normal and ordinary signification, unless there is some clear intention to the contrary. If a person qualifies within the exact meaning of language describing a class he will be held to be a member unless other language expressly or by fair implication indicates a contrary intent: Hogg's Estate, 329 Pa. 163; Witman v. Webner et al., 351 Pa. 503.

The only indication of an intent to exclude the adopted child appears in the primary use of the word "children" and, in my opinion, that is not sufficient to control the broad meaning of the later expression which includes all persons entitled under the intestate laws. The argument that the earlier restricts the later works both ways, because it could as well be said that the later enlarges the earlier.

In the absence of controlling words I believe that the safe plan is to give testator's words their well established meaning.

I conclude that the adopted child is such a person "as would be entitled to the property of my said daughter had she died the absolute owner thereof" and that the trust estate is vested in her, to the exclusion of all other claimants.

*Is there an intestacy in the original testator's estate because of the death of the daughter without husband or children?*

This is the last and by no means the least difficult question of construction.

The next of kin are the widow and seven children of testator, all of whom are now deceased. They include deceased life tenant. Many of their representatives appeared by counsel and claimed the fund under the intestate laws. Their contention is that the condition "in case any daughter shall die leaving a husband or

children her surviving" is annexed not only to the power of appointment, but to the gift over as well, and means:

If there is a husband or child, and the daughter leaves a will—then under her will.

If there is a husband or child and no will—then as the property of the daughter.

Therefore it is contended, as Mary left no husband or child, the fund can pass neither under her will nor as her property but is undisposed of and intestate property in the father's estate.

Was the possibility that a daughter might die without husband or children absent from testator's mind, and did he fail to provide for that contingency? It should be remembered that there were three daughters, and the same possibility applied to each. Mary, the youngest, was five or less years of age at the time of her father's death, and husband and children were far in the future.

Opposing rules of law apply to this situation. The court cannot provide for an event which appears to have been absent from testator's mind, however, strange the omission may be: Filbert's Estate, 195 Pa. 295. On the other hand, where a will is susceptible of two meanings, any doubt as to whether an event has been provided for must be resolved in favor of a complete disposition and against an intestacy: Cox's Estate, 180 Pa. 139; Kenworthy's Estate, 269 Pa. 315. See also Fisher's Estate, 302 Pa. 516, and Duffy's Estate, 313 Pa. 101.

Testator has used a comprehensive expression which describes not only husband and children, but grand-children and collaterals as well.

Mary was a very young child at the time of testator's death, and we should not suppose that testator intended no one but a future husband and child, and made no provision for other members of testator's family who would then have been her heirs.

I am of the opinion that the condition "in case my daughter shall die leaving a husband or children" expressed in the first part of the sentence does not carry over and restrict the gift to heirs. It is given sufficient operation when it limits the right to make a will. The gift to heirs in the latter part of the sentence is a new idea or thought, and is restricted only by the making of a will "capable of operating on the contingency above mentioned". In other words, it is the will which is to operate on the contingency, and not the gift over.

We are enjoined in all cases of construction to consider the whole will, and to construe it, as the phrase is, by the four corners. I have read in particular the parts of the will which set up trusts for the sons of testator, to see if they throw light on the present difficulty.

The will sets up three independent trusts, one for a favored son, William, another for other sons, and a third for the daughters. The trust provision for the daughters is the one now in controversy.

The will is written by pen, but not by the hand of testator.

The gift on the death of William is:

"And upon the death of my said son to pay and transfer and convey the principal or estate devised in trust for him for life, or the securities and property in which the same shall be invested, to the uses of his will: Should he die leaving a widow or children & in default of such appointment, to such persons as would be entitled to the same if my said son had died, the owner of said property absolutely."

I have interpreted the figure which appears after the word "children" in the above quotation as "&" although it is not clear that it is such. This clause, it would appear, gives William an unrestricted power of appointment and attaches the condition of there being a widow or children to the gift over to heirs.

This supports the contention of an intestacy in the present share of Mary.

The gift over on the death of each of the other sons is:

"And on the death of each of the said sons in trust, if he shall die leaving a widow or issue, to the uses of his will; and on default of there being any will, capable of operating under the above condition, then in trust for such person or persons as would be entitled to the same, other than the mother of such son if he had died the owner of the said principal sum so devised in trust."

This it would appear gives the other sons' shares to heirs generally and not merely to widow and children, because "the mother of such son" is excluded from the class of heirs and that class is a broader class than widow and children. This negatives the contention of intestacy in the present share of Mary. Why the mother is excluded from a son's share, and the same mother not excluded from a daughter's share, is a mystery.

Reference to these other clauses of the will merely adds confusion and is of no help in the present controversy. The three clauses being independent and different must stand alone.

I conclude that there is no intestacy in the estate of testator, William Adamson, and the claim of his next of kin is dismissed.

*Should the estate be awarded to the executor of Mary E. Adamson at her domicile?*

My conclusion that the attempted exercise of the power of appointment was void, and my further conclusion that the gift in default of appointment was a direct gift by testator himself to the heirs of Mary E. Adamson, and not to her creditors or legatees, removes any possibility of an award to the executor of Mary E. Adamson. The fund does not pass as her estate, but passes directly from William Adamson to the persons

designated by him to receive it, upon the death of his daughter. . . .

*G. Levering Arnhold*, for exceptants.

*Richard W. Thorington* and *James B. Lichtenberger*, for exceptants.

*Stradley, Ronon, Stevens & Young*, contra.

SINKLER, J., April 25, 1947.—Exceptions to the adjudication have been filed by the next of kin of testator, also by certain legatees named in the will of life tenant. Exception number one filed by the legatees has been withdrawn.

The adjudication contains complete recitals of the paragraphs of the will to be construed, of the facts and an analysis of the decisions bearing upon the case. We have only to add that the question to be determined is whether the learned auditing judge was correct in his decision that the adopted child of deceased life tenant is entitled to the principal of the trust whereof the income was payable to her, Mary E. Adamson.

In order to accept legatee exceptants' argument, we would be compelled to construe the will to mean that life tenant would have the right to dispose of the principal of this trust by will if she is survived by a husband or child and *that she would have exactly the same right* if she died without husband or child surviving. Such a construction strains testator's language and renders the first part of the section in question meaningless, as the latter part would, under such interpretation, have provided for a complete disposition of the fund whether life tenant died with or without surviving husband or child. The construction adopted in the adjudication properly gives effect to all of the language in the will and rejects none of it as surplusage: Ferguson Trust, 354 Pa. 367, 371 (1946) ; Horn Estate, 351

Pa. 131, 136 (1945); Hannach's Estate, 332 Pa. 145, 149 (1938).

The words "children", "next of kin", "heirs" have in common usage much the same meaning. Judicially construed, "children" does not include an adopted child, while "next of kin" and "heirs" have been held to include an adopted child. We are of the opinion that the adjudication, which holds that the words last quoted express the intent of testator, is correct.

The exceptions are dismissed, and the adjudication is confirmed absolutely.