## Lichtenwalner Estate

*John M. Metzger,* for exceptant.

*William E. Schantz,* trustee and guardian ad litem.

*Mitchell J. Rabil,* for U. S. Internal Revenue Service.

*John G. Penn,* for U. S. Department of Justice.

COYNE, P. J., January 28, 1966.—Preston G. Lichtenwalner died testate on July 6, 1959. His will, dated October 14, 1958, and a codicil thereto dated July 2, 1959, were duly probated, and letters testamentary were issued to his widow, Helen Lichtenwalner, and The First National Bank of Allentown. Testator left to survive him his widow, who has elected to take under the will, and 11 children, all of whom are sui juris.

In the fourth paragraph, subparagraph (a), of his will, testator bequeathed the residue of his estate to The First National Bank of Allentown in trust to "hold, invest and reinvest the same and after paying all expenses incident to the management thereof to pay over the net income therefrom to my wife, Helen, for and during the term of her natural life in quarterly installments. She shall also have the right and privilege, during her life, to live, free of rent, taxes and maintenance in the dwelling where we now live, usu-

ally known as the 'Meyers Farm' home. During my wife's life, the Trustee shall distribute to her from the corpus of the trust from time to time such amount or amounts as my wife shall demand by an instrument in writing delivered to the Trustee in her lifetime. Upon her death my Trustee shall pay the reasonable costs of her funeral and burial and a fitting marker for her grave".

In the fourth paragraph, subparagraph (b), of his will, testator gave the trustee the power to "sell at public sale all livestock included in my estate, subject to the right of my sons, Franklin W. and Lloyd M. to bid and purchase the same at such public sale by giving judgment notes in payment therefor to my Trustee, said notes to run for a maximum term of 5 years and to bear interest at the rate of $5\frac{1}{2}\%$ per annum. Provided however, that no public sale of my registered Holstein cattle shall be held prior to April 1, 1964, the purpose of this provision being to enable my said sons during the next 5 years to build up their personal herds. Prior to April 1, 1964, my said sons shall have the right to the income from milk, manure, etc. from said cows, provided, however, that they shall be responsible for the feeding and proper maintenance of my herd. Provided further, that the female calves shall be and remain the property of my estate under and subject to the conditions set forth in this subparagraph (b); the male calves however may be treated as other personal property and are not subject to the restrictions contained herein".

The fifth paragraph of the will provides that upon the death of testator's wife, the residue of the trust corpus shall be divided into 10 equal shares, and one shall be given absolutely to each of the following five children: Ida I. Williams, Franklin W. Lichtenwalner, George P. Lichtenwalner, Lloyd M. Lichtenwalner and Gloria M. Gregor. The other five shares are to be

awarded to The First National Bank of Allentown, trustee, each share to constitute the corpus of a separate trust . . .

By writing dated April 1, 1964, and addressed to The First National Bank of Allentown, the widow demanded that the sum of $50,000 be distributed to her from the corpus of her husband's estate. The writing contained this further statement: "The reason for this request is that I wish to equalize the respective inheritances of my 11 children both by gifts during my lifetime and by the planning of my own estate. The Will of my late husband was not satisfactory to me in this regard". Admittedly, the widow, if successful in this effort, intends to follow the same course with respect to whatever other residuary assets become available for distribution.

On October 23, 1964, this court adjudicated the first and partial account of Helen Lichtenwalner and The First National Bank of Allentown, executors of the last will and testament of Preston G. Lichtenwalner, deceased, and entered a decree of distribution returning the entire residuary estate to the executors for further administration. In so doing, the court rejected the contention of testator's widow that she was entitled to receive, pursuant to her demand, $50,000 from the corpus of the estate. Exceptions, five in number, have been filed on behalf of the widow to the court's adjudication and order. All of these exceptions are directed to the court's refusal to direct distribution of $50,000 to testator's widow. Following argument, the disposition of these exceptions is now before the court.

Before proceeding with this opinion, it should be noted that pursuant to section 707 of the Orphans' Court Act of August 10, 1951, P. L. 1163, as amended, 20 PS §2080.707, notice was given to the United States. The reason for this lies in the fact that the estate tax division of the Internal Revenue Service has disallowed

the marital deduction in this instance, and since our decision may adversely affect the interests of the United States as a taxing authority, the provisions of section 707 were brought into play. As a result, attorneys from the United States Department of Justice have appeared on behalf of the Federal government and participated in the audit of the executors' account and all subsequent proceedings.

A review of exceptant's brief reveals an effort to distinguish Tyson's Estate, 191 Pa. 218, Watson's Estate, 241 Pa. 271, 88 A. 433, and Degenkolv v. Daube, 143 Pa. Superior Ct. 579, 18 A. 2d 464, cases upon which the auditing judge relied in rejecting the widow's demand for distribution from the corpus of the estate, from the instant case. Exceptant argues that the facts—and particularly the operative language in the controlling instruments—in those three cases are so different that they should not be relied upon in deciding the case at hand. In particular, exceptant contends that since in the instant case the word "demand" stands alone without words of limitation or restriction, this case differs from the cases relied upon by the auditing judge, because in those cases, the power to invade principal was circumscribed by restrictive language. It is true that in Tyson's Estate, the will employed the words "for her sole use", and that in Watson's Estate, the words "for her sole use, benefit and support" were used. In the Degenkolv case, the language is "to use and dispose of both the income and principal as she may desire during her life". Although exceptant's brief does not spell it out, the gist of her argument is that the word "use" connotes a conversion or employment to the donee's own service, thereby imposing a restriction upon the power to consume, a restriction which is not present in the instant case.

We must point out, first, that the auditing judge did not state that the instant case was controlled by Tyson's

Estate, Watson's Estate and Degenkolv v. Daube. What he said was that the principles set forth in those cases were applicable to the case at hand. In the second place, we think that from a pure factual standpoint, the within case is more like those cases of which Byrne's Estate, 320 Pa. 513, 181 A. 500, and Brennan's Estate, 324 Pa. 410, 188 A. 160, are examples. In those cases, testator first made an absolute gift to the legatee and then in a subsequent paragraph of his will provided that whatever remained of his estate upon the death of the first legatee be distributed to a second legatee. In such cases, it is well settled that the first legatee acquires a life estate with a power to consume— a power, if you will, which is unrestricted by any testamentary language. Yet in both Byrne's Estate and Brennan's Estate, it was held that the first legatee had no power to dispose of the unconsumed portion of testator's estate by will. While we are aware of no Pennsylvania case in which, under facts such as existed in the Byrne and Brennan cases, it has been held that the first legatee had no power to dispose of a portion of testator's estate by inter vivos gift, we have little hesitancy in recognizing that to be the law. In the Degenkolv case, the court stated, as a general proposition of law, that a life tenant with the power to consume principal may not dispose of the property by inter vivos gift, particularly if the effect of the gift is to change the beneficiaries designated by testator and to substitute therefor others chosen by the life tenant. See also Johnson Estate, 359 Pa. 645, 59 A. 2d 877, citing Tyson's Estate, supra.

Frankly, we see no factual distinction between the case where the donee is given an absolute estate with remainder over of the unconsumed portion of the estate and the case where a life tenant is given an unfettered right to demand corpus from the trustee. In both instances, the power to consume is unlimited and unre-

stricted by any language whatsoever. If it be true in cases of the first type that the life tenant may not dispose of corpus by will or inter vivos gift, we see no reason why those principles are not equally applicable to cases of the second variety. Consequently, we are of the opinion that the application of the principles expressed in Tyson's Estate, Watson's Estate and Degenkolv v. Daube to the case at hand was proper.

The important objective in cases of this sort is always to ascertain testator's true intent as revealed by the language of his will. And, with rare exception, each case is unique unto itself. In light of the language of this will, we believe that the auditing judge correctly concluded that when testator gave his widow a life estate with the power to demand distribution of principal to her, his plain intention was to give his widow a life estate with an unlimited power of consumption. Having reached that conclusion, the aforementioned principles of law come into play, and we arrive at the same result as did the auditing judge. What we are saying, in effect, is that the donee of a stark power to consume principal of a trust or life estate is restricted in the exercise of that power to consume for herself, and herself alone, and may not by inter vivos gift or will dispose of principal to the detriment of the remaindermen designated by testator.

Can the language in testator's will be construed as a power to appoint? We think not. While no technical form of words is necessary to create a power of appointment, the intention on the part of testator to create such a power must be clear. We can discern no such intent on the part of this testator from his use of the word "demand", and particularly when we consider that word in context with the balance of his will.

It is suggested by exceptant that the conclusion of the auditing judge all but reads out of the will a crucial sentence, namely, the sentence which gives the widow

the power to demand corpus from the trustee. This, of course, is patently incorrect. The conclusion of the auditing judge gave very substantial force and effect to that sentence. To the contrary, were we to accept the arguments of exceptant, the net result would be to open the door to a complete negation of a major portion of the will.

In conclusion, we are of the opinion that the matter was properly decided by the auditing judge, and we, therefore, enter the following

### ORDER

And now, January 27, 1966, the exceptions of Helen Lichtenwalner to this court's adjudication of the first and partial account of Helen Lichtenwalner and The First National Bank of Allentown, executors of the last will and testament of Preston G. Lichtenwalner, deceased, and the order appended thereto, dated October 23, 1964, are dismissed, and the adjudication and order are confirmed absolutely.