# Carney v. Carney.

*Deed—Voluntary deed—Equity.*

The power of a court of equity to set aside a voluntary deed, is of an exceedingly delicate character not to be lightly exercised, and only to be invoked when the manifest justice of the case requires it.

*Deed—Voluntary deed—Absence of power of revocation.*

The absence of a power of revocation from a voluntary deed of trust standing by itself, has no efficacy to authorize either the party who executed the deed, or any court on his application, to revoke the deed. It is only when connected with other circumstances which show that the clause of revocation was omitted by mistake or fraud, or that the object of the deed of trust has failed by reason of the death of the cestui que trust during the lifetime of the grantor, or some other equally strong and urgent cause, that it can be permitted to justify a decree of revocation.

*Deed—Voluntary deed—Parent and child—Evidence—Presumption.*

A child may accept a voluntary deed from a parent without being subject to an obligation to make affirmative proof that the grantor was fully acquainted with the character of the act in which he was engaged, and that the conveyance was fair and conscionable.

A voluntary deed without clause of revocation by a father to his son will not be set aside where it appears that it was executed without fraud, accident or mistake, and without any duress or undue influence on the part of the son, and that the son had expended for the support and maintenance of his father a sum equal, if not exceeding, the amount in which he was actually benefited by the deed.

Argued Feb. 20, 1900.   Appeal, No. 194, Jan. T., 1899, by defendant from decree of C. P. Lackawanna Co., March T., 1896, No. 6, on bill in equity in case of John Carney v. Michael Carney, Jr.   Before GREEN, C. J., McCollum, Mitchell, Dean and Fell, JJ.   Reversed.

Bill in equity to declare void a voluntary deed, and for a conveyance.

The facts appear by the opinion of the Supreme Court.

The court in an opinion by GUNSTER, J., entered a decree in accordance with the prayers of the bill.

*Error assigned* was the decree of the court.

*A. A. Vosburg*, with him *W. H. Stanton* and *Charles W. Dawson* for appellant.—In case of parent and child, transactions may be avoided because of influence unduly exerted by the one who is more dependent upon the other.   No presumptions of such influence, however, arise from the existence of the relation: Jenkins v. Pye, 12 Pet. (U. S.) 241.

We fail to find any case where the mere parental relation, without more, has been held to raise a presumption of undue influence.   In all the cases, there were circumstances of suspicion, a weak intellect on the part of the grantor, or some other fact tending to show undue influence, which were considered in connection with the parental relation: Jones' App. 39 Leg. Int. 52 ; Jenkins v. Pye, 12 Pet. (U. S.) 241.

*Joseph O'Brien*, with him *John P. Kelley*, for appellee.—In many cases the court, from the relations existing between the parties to the transaction, infers the probability of undue influence having been exerted: Darlington's App., 86 Pa. 518; Bispham Equity, 3 ed. sec. 295 ; Miller v. Rivers, 138 Pa.

270 ; Smith v. Loafman, 145 Pa. 628 ; Boyd v. Boyd, 66 Pa. 283 ; Rea's Est., 11 W. N. C. 77 ; Miskey's App., 107 Pa. 630.

The defendant having failed to prove the righteousness of the transaction this deed cannot be permitted to stand : Allore v. Jewell, 94 U. S. 506 ; Miskey's App., 107 Pa. 632 ; Blume v. Hartman, 115 Pa. 32 ; Darlington's, Est., 147 Pa. 624.

OPINION BY MR. CHIEF JUSTICE GREEN, May 14, 1900 :

The proceeding in this case was a bill in equity to avoid a deed for a small piece of property consisting of a house and lot situated in the city of Scranton, and worth according to the testimony about $1,500 to $2,000. The deed was made by Michael Carney, Sr., to his son Michael Carney, Jr. After the death of the father the other son of the grantor in the deed, and brother to the defendant, filed this bill to have the deed made by his father to his brother declared null and void upon the ground that it was obtained by fraud and undue influence, and was without consideration ; that it contained no power of revocation ; that the grantor was addicted to habits of excessive intoxication, and that he was not possessed of sufficient mental capacity to understand the effect of his act in making the deed. The answer denied all the allegations of the bill and averred that the grantor had a full knowledge and understanding of the act in which he was engaged when the deed was made, and that it was really made upon a full consideration consisting of the personal support and maintenance of his father by the defendant, and of the constant services of himself and his family in waiting upon and caring for his father during a period of thirteen years without any charge or compensation whatever, the father during all that time dwelling in the defendant's house as a member of his family. A large amount of testimony was taken on the hearing before the court in support of the averments on both sides. On the subject of excessive drinking and mental unsoundness and undue influence the court found as follows :

" Although he was old and unable to read and write, and addicted somewhat to the use of drink, I cannot find that on May 2, 1888, he was so weak in body and mind, or that he used intoxicating liquors, to such an excess as to be easily influenced, and not possessed of sufficient mental capacity to comprehend the meaning of the deed now in controversy or to understand

the effect of his act." An examination of the testimony convinces us that the learned court was quite correct in this finding. The evidence falls far short of sustaining the allegations of the bill on these subjects, and they are therefore eliminated from further discussion. The court also made a further finding as follows: "While there may not be any positive testimony in the case that the defendant exercised undue influence over his father, the circumstances of the case as they appear to me are such as to throw upon the defendant the burden of proving the righteousness of the transaction by which his father practically stripped himself of all he had." The court further found that the deed contained no power of revocation and that the grantor had no independent advice, and that the evidence failed to satisfy the court that the transaction was fully understood by the grantor and concluded as follows: "The defendant having failed to prove the righteousness of the transaction this deed cannot be permitted to stand." Upon this last ground, and upon that alone, the court made a decree that the deed in question "to be set aside, canceled and annulled."

After a full and patient study of the testimony and a careful consideration of the authorities applicable to the case, we find ourselves quite unable to agree with the learned court below in the conclusion reached, and we are therefore obliged to reverse the decree. It will perhaps be desirable to quote in the first instance some of the utterances of this court upon the general subject of the exercise of the right to set aside deeds of this character. In Simon v. Simon, 163 Pa. 292, we said, "While it is entirely true that in circumstances which have been well defined in several of the decisions of this court, equity will upon proper occasion intervene and set aside voluntarily executed deeds and other instruments, yet the power to do so is of an exceedingly delicate character, not to be lightly exercised, and only to be invoked when the manifest justice of the case requires it." Upon a consideration of the whole testimony in that case we declined to interfere and sustained the deed.

In Wilson v. Anderson, 186 Pa. 531, a well considered case in which we refused revocation although the ultimate enjoyment of the estate of the beneficiaries was postponed until after the death of the grantor, we said, "The general rule is that if the intention of the grantor at the time he delivered the deed,

was to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor. Equity, because of exceptional facts, in rare cases, has revoked the trust, or held it revocable by the grantor because plainly a revocable instrument; but the general rule has remained without change."

In Rynd v. Baker, 193 Pa. 486, we said, "The absence of a power of revocation from a deed of trust such as this, standing by itself, has no efficacy to authorize either the party who executed the deed, or any court on his application to revoke the deed. It is only when connected with other circumstances which show that the clause of revocation was omitted by mistake or fraud, or that the object of the deed of trust has failed by reason of the death of the cestui que trust during the lifetime of the grantor, or some other equally strong and urgent cause, that it can be permitted to justify a decree of revocation."

In addition to the considerations which arise from the foregoing authorities, it is to be observed that, in the present case, the deed was made by a father to a son, and in that particular relation the rule as to the burden of proof of the fairness of the transaction is relaxed, and it is held that a child may accept a gift from a parent without being subject to an obligation to make affirmative proof that the grantor was fully acquainted with the character of the act in which he was engaged and that the conveyance was fair and conscionable. Thus in the case of Worrall's Appeal, 110 Pa. 349, we said, "There is nothing in the relation of parent and child, or other near relation, to preclude one from accepting a benefit from the other in the shape of a gift, or of a contract upon more advantageous terms than would have been granted to a stranger, and the fact that such a gift has been conferred, or contract made, will not warrant an inference that it has been procured by undue influence. Unless there is something suspicious in the circumstances, or the nature and amount of the gift is such that it ought not to have been accepted even if freely tendered, the donee will not be called upon to show that the transaction was in all respects fair and honest, and in no respect tainted by fraud or undue influence."

In Crothers v. Crothers, 149 Pa. 201, where the validity of

a deed from a father to his son, who was also his attorney in fact, was called in question, we said, " Were the instructions in relation to the burden of proof erroneous ? The learned judge declined to charge the jury that the power of attorney from Samuel J. Crothers to his son Leman created a presumption that the deed was invalid, but he distinctly stated that the presence of any fact or circumstance which cast the slightest suspicion upon the transaction would in view of the relation existing between the parties require the appellee to prove that there was no taint of fraud or undue influence in it. We think this instruction was unobjectionable as an answer to the appellant's first and second points, which in effect requested the court to hold that the relation, in itself, was sufficient to put upon the appellee the burden of showing that the transaction was fair and honest."

In Simon v. Simon, supra, the conveyance was by a mother to her daughters. On a bill filed by the mother to revoke the deed, we said amongst other things, " As between such parents and such children the law makes no presumption of undue influence which the children are bound to explain in order to obtain the benefit of a voluntary conveyance of property to them. The parental relation alone is enough to rebut any such presumption." In the very similar case of Knowlson v. Fleming, 165 Pa. 10, we said, "Here as in the case cited, the deed was made by parents to a daughter who was entirely competent to receive and hold it, without any necessity of showing by proof that it was fair and conscionable, as in the case of a voluntary conveyance to a stranger."

In the case of Doran v. McConlogue, 150 Pa. 98, it was said relative to the absence of a power of revocation from the deed, " In regard to the non-insertion of a power of revocation in the deed it is only necessary to say that, as this was not a mere voluntary conveyance, but one founded upon a good consideration, it was not proper that it should contain a power of revocation and the absence of such a power is entirely immaterial."

There are numerous other decisions of this court upon the general subject, which if it were necessary it would be profitable to consider. But those above cited are quite sufficient to dispose of this case. Having read with care the whole of the testimony in this case, the writer is obliged to say that there is not

a particle of testimony worthy of a moment's consideration to show either mental unsoundness, or excessive habits of intoxication sufficient to invalidate the deed, or that fraud, imposition or mistake was practiced upon the grantor. As to the allegation of undue influence exerted by the grantee upon the grantor to obtain the execution of the deed, there is not a fragment of testimony on the record to show that any influence whatever was used. The learned court below founded the decree annulling the deed solely upon the proposition that the burden of proof rested upon the grantee to show the righteousness of the transaction, and as there was no such proof the deed must be set aside. We are of opinion that this was erroneous for two reasons. First that the grantee, being the son of the grantor, was not subject to that duty. He was at liberty to accept a deed of gift from his father without deing obliged to explain the transaction and show its fairness. But in the second place, the grantee did show by an abundance of testimony, that he had furnished to his father an ample consideration for the conveyance. He proved fully that he had supported and maintained his father at his own expense for nine years before the execution of the deed, and continued to do so until his father's death, more then two years later. He furnished him with house room, food, personal attendance, care of his clothing and person in health and in sickness, his father being a very old man, and during the last seven or eight months of his life being confined to the bed. The property being worth from $1,500 to $2,000, and at least a one half interest passing to the defendant under the intestate law if his father had died intestate and seized of the property in question, it follows that $750 to $1,000 would represent the amount really at stake in the present litigation. Even at $1,000 the compensation received by the defendant under the deed, would be less than $100 per annum. It is not possible to speak of this as an unreasonable allowance, and as the fact of the support and maintenance being furnished by the defendant during the whole period appeared affirmatively in the testimony we think it will have to be conceded that even granting that the defendant was subject to the duty of explaining the fairness of the transaction, he has discharged that duty. In Doran v. McConlogue. supra, we held that it was not necessary to prove a previous

contract. We said, " It was further found that there was a good consideration for the deed. In this finding we also concur. It was not at all necessary that there should have been an original contract to compensate Mrs. McConlogue for her services in order to sustain the validity of the deed. It is quite sufficient if it appear, as it abundantly does, that services were rendered by the grantee to the grantor." In such circumstances the presence of a power of revocation in the deed would be out of place, and the want of independant advice would not constitute any objection to the validity of the deed. For these reasons we think it was error to annul the deed in question. The assignments of error are sustained.

The decree of the court below is reversed and the deed from Mitchel Carney senior, to his son, the defendant, is reinstated and adjudged to be good and valid. Costs to be paid by appellee.