Smiles et al. *v.* Daube, Appellant.

Argued October 1, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Kenneth D. Matthews,* of *McHale, Briddes & Matthews,* for appellant.

*Bryan A. Hermes,* for appellees.

OPINION BY CUNNINGHAM, J., April 13, 1938:

The controversy out of which this appeal arises had its origin in the unusual circumstance that Wilhelmina Daube, widow of Henry Daube, on February 1, 1933, signed and acknowledged a deed purporting to convey to her son, Charles Daube, appellant herein, title in fee simple to the premises known as No. 2544 N. Jessup Street, Philadelphia, and at the same time executed her will in which she referred to the conveyance and directed that the grantee should hold the premises "in trust for the sole benefit, use and behoof," of her daughter, Anna Smiles, during the lifetime of the latter and at her death convey the property, share and share alike, to Anna's children. The deed was delivered by Wilhelmina Daube to her son early in March, 1934, and was recorded on the 15th of that month; Wilhelmina died November 21, 1934, and her will was duly probated.

In March, 1935, Anna Smiles and her four children filed the present bill in equity praying for a decree restraining Charles Daube from conveying or encumbering the premises and directing him to execute a declaration of trust certifying that he held the property in accordance with the provisions of his mother's will. During the course of the proceedings Anna Smiles died and the litigation was continued in behalf of her four children, named as appellees herein. It resulted in a final decree by the court below, dated March 8, 1937, directing Charles Daube to convey the premises to the children of Anna Smiles and to account to them for the rents received by him subsequent to December 10, 1935, the date of the death of their mother.

Contending that the only reasonable conclusion to be drawn from the evidence is that the delivery of the deed to him amounted to a valid gift, inter vivos, and that such delivery revoked the provision of the will relied upon by appellees, Charles Daube appealed from the decree.

The sixth paragraph of the bill reads: "6. Complainants aver that at and before the time of the execution of the will and the deed, said Charles Daube undertook and agreed to hold title to the said premises in trust for the complainants, as provided in the will of the decedent, and so accepted the deed and the trust, and paid no consideration to Wilhelmina Daube, grantor, upon execution of the deed, a recited consideration of $1.00 being merely formal." This averment was flatly denied by appellant in his answer and the seventh finding of fact of the chancellor reads: "There is no evidence that defendant ever knew of the contents of the will of Wilhelmina Daube until after her decease."

William C. Lynch, Esq., was the scrivener of both instruments. One of the grounds upon which appellees sought equitable relief was thus pleaded in the seventh paragraph of their bill. After referring to the preparation of the will by Mr. Lynch, the paragraph describes the drafting of the deed as follows: "And on the same date [he] prepared the deed in fee simple from Wilhelmina Daube to Charles Daube, and the same was done as the result of an agreement of Charles Daube agreeing to hold said property in trust as provided in the will; and the provisions of the trust, as set forth in the will and as understood and agreed to by Charles Daube, were inadvertently, by mistake or accident, omitted from the deed."

In essence, the bill was one to reform the deed upon the ground that the scrivener had accidentally omitted therefrom a provision which the grantor intended should be included therein, namely, that the grantee

should hold the property therein described, not in fee simple but in trust for Anna Smiles and her children. No effort was made at the trial to introduce evidence which would tend to bring the case within the principle that "the mistake of a scrivener in preparing a deed, or other writing, may be shown by parol evidence, and the instrument reformed accordingly." See *Preis & Preis v. Mulholland & Gotwals,* 96 Pa. Superior Ct. 104, and cases there cited. On the contrary, the testimony of the scrivener, as will appear later, was to the effect that nothing had been omitted from the deed by accident or mistake.

Counsel for appellees undertook to make out a prima facie case by offering such averments of the bill as were admitted in the answer, and by placing the will in evidence. These averments included the relationship of the parties, the execution of both instruments upon the same date, the date of the death of the mother, the recording of the deed, and the probating of the will. All the other evidence upon this record was introduced by, and on behalf of, appellant and is uncontroverted.

The controlling findings below were that "the contemporaneous execution of the will and deed make it plain that it was then the intention of Wilhelmina Daube that title should be held by defendant in accordance with the terms of the will"; that "there is no evidence that this intention on her part ever changed"; and that as appellant had not paid any consideration or "done anything to his detriment on faith of the conveyance" he could not be harmed "by giving effect to the very evident intent of the testator."

It was assumed by counsel upon both sides in their printed and oral arguments in this court that the only questions involved upon this appeal related to the inferences fairly and reasonably arising out of the uncontroverted facts, which may be thus summarized.

In January, 1933, Wilhelmina Daube was living with

her daughter, Anna Smiles, but had a feeling of hostility toward her daughter's husband. About January 20th, appellant and his wife took her to the office of William C. Lynch, Esq., a practitioner at the Philadelphia bar for thirty-five years, for consultation with him. Upon their arrival at his office, Mrs. Daube said she wanted to see him privately. Mr. Lynch's testimony continues: "So I took her into my room. She told me she wanted to have a deed drawn from herself to her son, Charles Daube, and gave me the particulars, that is, handing me the papers which she had. I laid them aside, and she said she wanted to make a will. So she gave me the data for the preparation of her will. So I told her then I would have these ready for her the next time she came. Then she left. About a week or ten days later, as it appears here, February 1, 1933, she came again. I might state here that my stenographer prepared the deed herself with the papers I handed to her and laid them aside, and a few days later I had drafted up a will and gave her the draft and she transcribed it and put the both papers together. I never looked at them until Mrs. Daube came to see me. She was an elderly woman. I read the deed to her. Then I read the will to her. It was then I discovered that there was an inconsistency, that the will was not compatible with the deed. So I explained that to her. I told her that it was not necessary for her to have a deed to carry the intentions of her will to her daughter. Well, she says, 'Never mind that.' I said, 'I want to make it clear to you.' So I told her that this deed I had prepared was a fee simple deed which conveyed the title in fee simple to her son, *and if she gave that to her son at any time without reference to the will, that that would carry the fee simple and would defeat the purpose of the will.* Well, she says, '*Never mind that. That is just what I want.*' I made it as clear as I possibly could to her that this will and deed were incon-

sistent, *and offered to prepare a new deed while she was there. She declined that.* So she executed both papers at the same time, and I sealed the will in an envelope and gave it to her and gave her her papers, including this deed. That is all I know about it." (Italics supplied)

It is clear that this testimony not only fails to show that anything was omitted from the deed by accident or mistake, but, on the contrary, flatly contradicts the averments to that effect in the bill. It also shows that Mrs. Daube understood fully what effect the delivery of the deed would have upon her will. There was testimony that neither appellant nor his wife was present at either of the interviews between his mother and Mr. Lynch; that the latter never told either of them what was in the will; and that appellant brought the will to Mr. Lynch after his mother's death in the envelope in which Mr. Lynch had placed it and with the seal unbroken. The will also devised the premises at No. 2546 to appellant outright and the property at No. 2548 to another son, Harry. The fourth paragraph refers to the property now in dispute and reads:

"Fourth: Under the terms of my late husband's will, I have exercised the power and authority vested and conferred upon me therein, and have conveyed the property situate and known as 2544 N. Jessup Street, unto my son, Charles Daube, his heirs and assigns, who shall hold the said premises in trust for the sole benefit, use and behoof of my daughter, Anna Smiles, for and during the term of her natural life, and at the time of her death convey the said premises over to her children then living, share and share alike. My sole object and desire being that the husband of my said daughter, Anna Smiles, shall not, in any manner, participate in the share or management of any part of my estate."

It cannot be questioned, under the evidence, that when Wilhelmina Daube left the office of Mr. Lynch

she had in her possession two instruments and had been given a clear explanation of the significance of each; she knew the effect which the delivery of the deed to her son would have upon the above quoted paragraph of her will.

Mrs. Daube retained possession of both instruments for more than a year. Some time in June, 1933, she left the home of her daughter and went to live with a sister in Bryn Mawr until December, 1933; she never returned to the home of Mrs. Smiles. A niece of Mrs. Daube testified that while the latter was living at Bryn Mawr she visited the witness and in the course of a conversation said, "She was going to make a will, change her will, and she was not going to leave her Anna one penny, that she had treated her terribly, and she said wouldn't I please make her a home, take her in my home?" The same witness testified that on a later occasion Mrs. Daube, while at the home of her son Harry, said, in the presence of the witness, "My Anna never even came to see me while I was sick or anything. She never came near me, and she only was around the corner."

During the existence of these strained relations between Mrs. Daube and her daughter the deed was delivered by Mrs. Daube to appellant, but she continued to receive the rents until her death. See *Cable v. Cable*, 146 Pa. 451, 23 A. 223, and *Knoll, Exrx. v. Hart, Exrx.*, 308 Pa. 223, 162 A. 228, to the effect that the postponement of the enjoyment of an estate does not prevent the instrument by which it is created from being a valid conveyance or deed, inter vivos, rather than a will.

The parental relation here existing is sufficient to rebut any presumption of undue influence upon the part of appellant and the natural love and affection existing between a mother and her son is a sufficient consideration: *Carney v. Carney*, 196 Pa. 34, 46 A. 264; and *Simon v. Simon*, 163 Pa. 292, 29 A. 657.

We think it apparent from this review of the competent and uncontradicted evidence upon the record that the correctness of the conclusion of the court below is open to grave doubt. Much might be said in support of appellant's contention that the only inference supported by the testimony is that the delivery to him by his mother of the deed for the property referred to in the fourth paragraph of her will constituted a valid voluntary gift, inter vivos, of whatever interest in that property she had power to convey and operated as a revocation, pro tanto, of her will.

For reasons about to be stated, we shall not decide that question at this time.

We have used the phrase, "whatever interest she had power to convey," because we think a serious question is involved in this litigation which was not raised in, or considered by, the court below. As it concerns the quantum of the estate Wilhelmina Daube had in the premises which constitute the subject matter of the bill, and as it involves her power to make any disposition of that property either by her will or by a gift, inter vivos, we deem it our duty to withhold a final disposition of this appeal until the matter has been considered and adjudicated below.

When the case came on for hearing it was evidently assumed by counsel upon both sides that Mrs. Daube had a fee simple estate in the premises. No intimation was given the chancellor of any question with relation to her power to devise the property as she might see fit, or give it away during her lifetime. We think it at least questionable whether she could lawfully do either.

The significance of the introductory statement in the above quoted paragraph of Mrs. Daube's will that she had made the conveyance to appellant under "the power and authority vested and conferred" upon her by her husband's will becomes apparent upon examination of the deed, (Appellant's Exhibit No. 1, Record 43a-

49a), as drafted by Mr. Lynch's stenographer. It is therein recited that the premises at 2544 N. Jessup Street are the premises which one Catherine Price deeded to Henry Daube, Wilhelmina's husband, on March 17, 1919, and which were disposed of by him in his will as a part of his residuary estate by the following provisions thereof, quoted at length in the deed: "Second: All the rest, residue and remainder of my estate—real, personal and mixed—whatsoever and wheresoever situate, I give, devise and bequeath to my beloved wife, Wilhelmina Daube, to use and dispose of both the income and principal as she may desire, during her life, and after her death, I give, devise and bequeath whatever portion of my estate remaining, to my children, share and share alike. Lastly: I do nominate, constitute and appoint my beloved wife, Wilhelmina Daube, Executrix of this my last will and testament, with full power of sale of in or to all my real estate or personal property that I may die seized of, the purchaser or purchasers thereof not to be liable for the application or non-application of the purchase money."

Apparently, her husband's will gave Mrs. Daube a life interest in his residuary estate with power to consume, but with remainders over of the unconsumed portion to his children (Anna Smiles, Henry Daube, Jr., and appellant) share and share alike. We are concerned only with the premises mentioned in the bill. The will gave her the complete use and enjoyment of that property and she was expressly granted full power to sell it and use the proceeds for her own benefit, but she was given no power to dispose of it by her will. Its disposition, in the event it should not be consumed during her lifetime, was controlled by her husband's will: *Byrne's Estate*, 320 Pa. 513, 181 A. 500 *Brennan's Estate*, 324 Pa. 410, 188 A. 160. As to implied powers of sale, see *Kennedy v. Pittsburgh & Lake Erie R. R. Co.*, 216 Pa.

575, 65 A. 1102; and *Allen v. Hirlinger,* 219 Pa. 56, 60, 67 A. 907.

Under the reasoning of our Supreme Court in *Fassitt v. Seip,* 240 Pa. 406, 87 A. 957, it may well be doubted whether the execution and delivery of the deed to appellant was a valid exercise of the power of sale conferred by Henry Daube's will. Clearly, the intent in making that deed was not to consume for herself. If we should affirm the decree now before us, the result would be to exclude two of the remaindermen from any interest in the premises which their father provided should go to his children share and share alike, if not consumed by their mother in her lifetime. On the other hand, if we should reverse the decree, appellant's brother and the children of his deceased sister would be excluded. As stated in *Fassitt v. Seip,* supra, "to change the beneficiaries after [the mother] from those chosen by her husband to others of her own selection would be a fraud on the testator and his will."

Whether either of the instruments out of which this controversy arose is of any validity is at least so doubtful that the questions we have indicated should have been raised and litigated below. Attention may also be directed to the fact that Henry Daube, Jr., one of the remaindermen under the will of Henry Daube, Sr., has not been made a party to the litigation. Neither an affirmance nor a reversal of the present decree would preclude him from hereafter asserting any interest he may have in the property under the terms of his father's will.

The decree is vacated and the record remitted to the court below for further proceedings not inconsistent with this opinion.