## Fulmer Estate

*Robert S. Taylor, Jr.*, for accountant.

*Francis H. S. Ede*, for exceptant.

WOODRING, J., February 28, 1955.—This is a question of construction of a will and arises on the application for approval of the audit statement for distribution.

Lottie Cope Fulmer died March 18, 1953, leaving a will dated May 20, 1939, and five codicils dated October 2, 1942, December 16, 1942, October 7, 1944, April 27, 1945 and July 5, 1946.

For the purpose of our consideration, testatrix gives her residuary estate to trustees and directs that the income therefrom be paid as follows: Grace Fulmer, sister-in-law, 30 percent and upon her death to her daughter, Ethel Kiefer; George W. Fulmer, brother-in-law, 5 percent; Edward J. Cassler, manager, 25 percent; Lester H. Miller, bookkeeper, 20 percent; Milton Kline, chauffeur, 20 percent.

The twelfth paragraph of testatrix's will and her first and second codicils provide that the income from her residuary estate be divided among her relatives and employes with the provision that if any beneficiary dies or if an employe leaves or is discharged "then

in that event their share shall be returned to the principal estate". The fifth and last codicil changes this provision to read, "then in that event their share shall be returned to my trustees for the benefit of St. Luke's Hospital of Bethlehem, Pennsylvania."

The thirteenth paragraph of the will provides:

"When all of the recipients aforesaid of said income are no longer eligible to receive the same, then I give the entire estate to the Saint Luke's Hospital of Bethlehem, Pennsylvania, for the establishment of a Ward or Beds to be known as the Lottie Cope Fulmer Ward or the Lottie Cope Fulmer Beds."

George W. Fulmer survived testatrix but died September 21, 1953. According to the accountant, 5 percent of the income from the date of his death to October 26, 1954, the last date in the account, is $426.12. The question now before the court is, whether or not the income to which George W. Fulmer was entitled to the date of his death is presently payable to St. Luke's Hospital or should it be accumulated until the corpus of the residuary estate is payable to St. Luke's Hospital under the provisions of paragraph 13?

Lottie Cope Fulmer was the surviving widow of Dr. Joseph H. Fulmer. The latter had a will substantially similar to the present will. The construction of the Joseph H. Fulmer will was the subject of a declaratory judgment in the Orphans' Court of Northampton County entered by the then President Judge Herbert F. Laub. The question in that proceeding was, whether the income beneficiaries were or might become subject to United States inheritance tax or collateral inheritance tax on any portion of the principal of the estate? In answer to this question by opinion dated June 24, 1946, Judge Laub said:

". . . the beneficiaries of income named in the instant codicil are not liable to pay any United States

inheritance tax or collateral inheritance tax on any portion of the principal of the estate of said decedent."

Accountants contend that the income from the share of George W. Fulmer should accumulate in the hands of the trustees and should not be paid to St. Luke's Hospital until the termination of all of the life estates as set forth in paragraph 13. Accountants assign two reasons for their contention: (1) The language in the fifth and last codicil, ". . . *then* in that event their share shall be returned to my trustees for the benefit of Saint Luke's Hospital . . ." (italics supplied) ; (2) a portion of the language of Judge Laub's opinion in the declaratory judgment action: ". . . but said income from the principal so returned to the trustee is accumulated income, accumulating for the benefit of the St. Luke's Hospital". Neither of these reasons satisfies us of their soundness. St. Luke's Hospital was not a party to the declaratory judgment action, nor was the question of accumulations raised or decided. The present question, therefore, has not been decided and the statement in the former opinion is clearly obiter dictum.

Turning our attention to the first assigned reason, namely, the language of the codicil, accountants argue that the word "then" refers to the death or discharge of the last surviving life beneficiary. It is contended that "for the benefit of Saint Luke's Hospital" is modified by the word "then" so that the hospital is not entitled to any income until the time for distribution of the corpus of the residuary estate. Such a construction, in our opinion, would create an intestacy as to the income on the respective shares of the life tenants following their death or discharge and until the termination of all of the life estates: In re Duffy's Est., 313 Pa. 101, 169 Atl. 142. Such a result is in contravention of the presumption that a testator intends

to dispose of his entire estate. The court, therefore, must construe a will to avoid, wherever possible, either partial or entire intestacy: Gerheim Est., 88 Pa. Superior Ct. 530; Ostrom v. Datz, 274 Pa. 375; Worst v. DeHaven et al., 262 Pa. 39.

We find no ambiguity in the language of the will. The only question is, whether current income should be paid out to the beneficiary or whether it should be accumulated? The general rule is that the law frowns upon and tries to discourage accumulations. For this reason the Act of April 18, 1853, P. L. 503, 20 PS §3251, now repealed, was passed to prohibit accumulations excepting for certain named charitable purposes. In the A. L. I. Restatement of the Law of Trusts, vol. 1, §182, the American Law Institute says:

"Where a trust is created to pay the income to a beneficiary for a designated period, the trustee is under a duty to the beneficiary to pay to him at reasonable intervals the net income of the trust property."

Comment (c) under that section reads:

"By the terms of the trust the trustee may be authorized or directed to accumulate the whole or a part of the income."

From that language we may conclude that the rule of law is that unless the terms of the trust provide otherwise, income shall be paid out currently and is not to be accumulated.

The subject of accumulations is expressly dealt with in §§440 and 446 of vol. 4 of the Restatement of Property. §440 reads:

"When a limitation is ambiguous as to whether it provides for an accumulation, or does not so provide, there is a constructional preference for finding that no accumulation has been provided for."

In the case at bar we find no ambiguity in the gift to St. Luke's. The corpus is payable on the death or

discharge of the last of the life tenants. The income of any deceased or discharged life tenant "is for the benefit of Saint Luke's". If such language constittuted an ambiguity, section 440 directs us to apply a constructional preference against an accumulation.

Section 446 reads:

"When the provisions of an accumulation statute are more restrictive than the common law rule against accumulations, the constructional preference (stated in §440) for finding that no accumulation is directed or authorized is stronger."

Following section 446 appears:

"Special Note: On January 1, 1944, the statutory rules concerning accumulations were considerably more restrictive than the common law in eight of the fourteen states dealt with in this Chapter" (Pennsylvania is included in the eight states referred to).

It is our opinion that when testatrix said: "then in that event their share shall be returned to my trustees for the benefit of Saint Luke's Hospital", she intended that upon the death or discharge of any life beneficiary the trustee should hold that percentage of the principal of the residuary estate from which the deceased or discharged life beneficiary had previously received income for the benefit of St. Luke's Hospital. The obvious benefit is the right to receive income from said share until the corpus was to be distributed. In the absence of expressed language providing for accumulation of the income, the beneficiary is entitled to it "at reasonable intervals" as it is currently earned and accounted for.

*Decree Nisi*

And now, February 28, 1955, it is hereby adjudged, ordered and decreed that the income from 5 percent of the residuary estate for the period from September 21, 1953, the date of death of one of the life bene-

ficiaries, George W. Fulmer, to October 26, 1954, the last day of the accounting period, $426.12, is the property of St. Luke's Hospital under the language of the fifth and last codicil of the will of Lottie Cope Fulmer. Counsel are requested to submit an appropriate order of confirmation and distribution in accordance with the account filed December 4, 1954, and the foregoing opinion.

The clerk of the orphans' court is directed to enter this decree as a decree nisi, the same to become absolute unless exceptions are filed thereto within 20 days.